```
RECEIPT # 55703
AMOUNT $ 150 Cash
SUMMONS ISSUED Y-2
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M
DATE 5-6-04
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| STEVAN JOHNSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| ) | JURY TRIAL DEMANDED |
| CONTINENTAL AIRLINES, INC. ) | |
| ) | 04cv10902 PBS |
| Defendant. ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**COMES NOW**, Stevan Johnson, Plaintiff, complaining of Continental Airlines. Inc., Defendant, and for causes of action against it would show the Court as following:

### I.
### PARTIES

*Plaintiff*

1.   Plaintiff, Stevan Johnson (Johnson), is a Black United States citizen. At all times material hereto, Mr. Johnson was an employee, as contemplated within the meaning of 42 U.S.C. § 2000e, *et seq*.

*Defendant*

2.   Defendant, Continental Airlines, Inc. (Continental), is a Delaware corporation doing business in the State of Massachusetts, as a certificated foreign air carrier, recognized as a carrier within the meaning of 45 U.S.C. § 151, *et seq*. At all times

1

material hereto, Defendant was an employer within the meaning of 42 U.S.C. § 2000e-(b), with more than 501 employees.

## II.
## JURISDICTION

3.  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331, 1343, 1337.

4.  Plaintiff further invokes this Court's supplemental/pendant jurisdiction, pursuant to 28 U.S.C. § 1367, with respect to such claims as may arise from the same operative facts under the Constitution and Laws of the applicable States of the United States of America.

5.  The employment practices Plaintiff alleges to be unlawful were at all times material to the facts made the basis of this lawsuit, being committed within the jurisdiction of the United States.

6.  Plaintiff has timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("E.E.O.C.") and has received a determination refusing to proceed from said agency. At the conclusion of the E.E.O.C.'s administrative process, Plaintiff received a Right-to-Sue Notice from the E.E.O.C. dated February 18, 2004, informing Plaintiff he had 90-days within which to file a lawsuit against Continental Airlines, Inc. for violations of VII of the Civil Rights Act of 1964, as amended.

## III.
## VENUE

7.  Venue is appropriate and proper in Boston, Suffolk County, Massachusetts pursuant to 28 U.S.C. § 1391(c) because the Defendant is a corporation residing, upon

commencement of this action, in the Judicial District of Massachusetts subject to personal jurisdiction of this Court.

## IV.
## FACTUAL ALLEGATIONS

8.  Plaintiff, Stevan Johnson ("Johnson"), is a Black United States citizen.

9.  Johnson submitted for consideration an application for employment with Continental Airlines, Inc. ("Continental") in Boston, MA and accepted Continental's offer of employment, whereby, the parties entered into an "at-will" employment relationship (hereinafter "agreement") on June 8, 1994. Johnson was continuously employed as a Field Services Agent from the inception of the agreement until Katherine J. Churchill terminated the agreement on August 8, 2001.

10. The agreement alleged in paragraph 9 is governed by contract law.

11. After being terminated, Johnson attempted to have the termination of the agreement reversed by means of Continental's Appeal Process promulgated in the "Working Together Guidelines" published by Defendant for distribution to Its' employees for the purpose of creating uniformity in the application of Company Policy.

12. Continental admitted in <u>McGuire v. Continental Airlines, Inc.</u> 210 F. 3d. 1141 (CA10 2000) that the "Working Together Guidelines" Appeal Process is a contract.

13. The relevant provision of the "Working Together Guidelines" Appeal Process are incorporated into the various "Field Services Fly To Win Handbook(s)" for those employees classified as Field Service Agents. As a condition of employment Continental required all Field Services Agents to agree to the following:

> "IF I have a dispute with the company, I agree to use the Appeal Procedure for the resolution of any controversy

3

arising out my employment or separation from employment."

14. On October 17, 2001 Ryan Price-Managing Director Field Services Human Resources acted in concert with Katherine Churchill to deny Johnson the opportunity to appeal the August 8, 2001 termination, based on an alleged claim of job abandonment.

15. This claim of abandonment is not consistent with company documents showing Johnson on some sort of alleged leave of absence at the time it is alleged that he was to have abandon his job.

16. Prior to the termination of the agreement on August 8, 2001 Johnson initiated proceedings on August 7, 2001 with Nick Petrov-Terminal Operations Director IAH for recovery of wages that were illegally withheld from him by Continental.

17. On August 7, 2001 Johnson complained, to Katherine Churchill-Human Resource Manager IAH, of discriminatory treatment he believed he was the victim of. The next day August 8, 2001 Ms. Churchill terminated Johnson's employment agreement with Continental.

18. The conduct of Johnson described in paragraph 16-17 was protected by various federal anti-retaliation statutes.

19. While working in BOS prior to his transfer to IAH, Johnson was under the direct-supervision of Peter Walsh ("Walsh"). On May 5, 1997 Walsh issued Johnson a written notice of an alleged violation of Continental's attendance policy. In response to this written notice that Johnson filed an appeal on July 29, 1998 to have his record expunged of this alleged attendance policy violation.

20. Johnson believes the May 1997 written notice was racially discriminatory as demonstrated by documents discussed during the April 4, 2001 meeting detailed *infra*.

4

21. After Johnson filed the appeal opposing Walsh's written notice, Walsh increasingly began to find more alleged *un*-acceptance with Johnson's work performance at Continental.

22. The first of which was a written reprimand on August 6, 1998 just 8-days after Johnson filed his appeal opposing the written notice Walsh had issued Johnson for the alleged attendance violation.

23. Thereafter, Walsh issued Johnson three (3) more successive written reprimands within very comparatively close proximity to the first he had issued to Johnson on August 6, 1998.

24. Along with the increased frequency of alleged reasons to reprimand Johnson, Walsh simultaneously began making employment decisions that adversely affected Johnson's earnings.

25. On September 7th & 8th, 1998 Walsh was involved in decisions that kept Johnson from utilizing a unique employment benefit called day-trading that made it possible for employees to increase their income.

26. This was followed by Walsh making the decision not to award Johnson overtime that he was otherwise entitled to be awarded on November 22 and 23, 1998.

27. These events lead to Walsh's superior Jeff Willis-General Manager BOS displacing Johnson on July 1, 1999 from his chosen work area, " to take [Johnson] out of harms way",[1] where he was working under the direct supervision of Walsh.

28. The reassignment by Willis was met with a verbal plea from Johnson on July 1,

---

[1] This was the disturbing reason Jeff Willis gave to the Plaintiff on July 1, 1999 as to why he was moving Johnson from his chosen work area and reassigning him to a work area he opposed.

1999 opposing Willis' decision.

29. Only after Johnson gave Willis written notice on July 7, 1999 of his opposition to the reassignment did Willis reconsider his decision and allow Johnson to return to his chosen work area.

30. The written notice of opposition on July 7, 1999 was followed the next day by Walsh immediately issuing Johnson yet another written reprimand on July 8, 1999.

31. Willis made his decisions described in paragraph 30 after Johnson had brought to Willis' attention a "nigger" joke that had been told to Johnson by a Continental employee that worked in Boston with Johnson.

32. The acts of Willis and Walsh shows racial indifference to Johnson and are alleged to be in violation Johnson's civil rights.

33. About two (2) weeks later Johnson's work location transfer with Continental from BOS to IAH became effective on July 26, 1999.

34. On April 4, 2001 Johnson met with a Human Resource manager at Continental's corporate headquarters at 1600 Smith Street in Houston. Johnson emerged from that 3-hour meeting believing that an investigation was going to be conducted as a result of that meeting to assess any action that may have been warranted.

35. Johnson ended up applying for employment in Boston, MA on June 28, 2002 with a company that contracts to provide airport services. The particular company that Johnson sought employment with actually provided Sky Cap service to Continental in Boston, MA. Johnson was hired on the same day he applied and it was agreed that he was specifically hired for a position as a Sky Cap providing service to Continental.

36. However, before Johnson commenced work, Walsh requested that Johnson not

be assigned to provide service to Continental in his capacity as a Sky Cap, causing his new employer to renege on the agreement it had made with Johnson on June 28, 2002.

37.   The reason for the request by the Walsh is rooted in Johnson's previous employment relationship with Continental.

38.   A relationship that was terminated because of controversy that arose out of Johnson's opposition to Continental's employment practices.

39.   It is alleged by agents for Continental that the termination of the agreement on August 8, 2001 between Continental and Johnson was the result of Johnson's alleged refusal to participate in Continental's Electronic Time & Attendance System ("eTA"), which was claimed by Katherine Churchill to be a requirement for continued employment.

40.   Continental has no evidence that Johnson ever refused to participate in the eTA.

41.   On February 22, 2003 a White Field Services Agent at IAH refused to participate in Continental's eTA but was able to continue his employment despite his refusal to participate in Continental's eTA.

42.   This employee's opportunity for continued employment was possible because Continental offered this employee an alternative employment opportunity that enabled him to maintain his active employment status with Continental.

43..  Johnson was not offered the alternative employment opportunity that was offered to the White Field Service Agent.

44.   The alternative employment opportunity offered to the similarly situated White employee of Continental and not offered to Johnson is discriminatory on the basis of race.

45.   The alternative employment opportunity not offered to Johnson deprived him of

an equal employment opportunity that enabled the White employee to avoid the same adverse impact on his employment status suffered by Johnson.

46. Johnson's termination of employment occurred while he and his co-worker at IAH, Pumphrey, were simultaneously on Company authorized leave(s) of absence(s), according to internal Company documents.

## V.
## CAUSES OF ACTION

### COUNT I - VIOLATION OF 42 U.S.C. § 1981

47. Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-46 above as if set forth fully herein.

48. Defendant, by and through management, intentionally discriminated against Black employees, including Plaintiff, with respect to assignments, promotions, compensation, working conditions, discipline, and discharge.

49. Defendant, by and through management, intentionally discriminated against and deprived such employees, including Plaintiff, the same benefits, privileges and protections as Whites under the law of the United States of America.

### COUNT II - VIOLATION OF 42 U.S.C. § 1985

50. Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-49 above as if set forth fully herein.

51. Katherine J. Churchill and Ryan Price interfered with Plaintiff's civil rights secured by 42 U.S.C. § 1981 when they conspired to intentionally discriminated against him, when Johnson attempted to enforce his contractual appeal rights, in retaliation for

his engagement in statutorily protected activity.

52. On July 12, 2003 Peter Walsh conspired with Plaintiff's employer at that time, causing him to be intentionally discriminate against in his pursuit of an advantageous business relationship.

### COUNT III - VIOLATION OF 42 U.S.C. § 2000e, *et seq.*

53. Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-52 above as if set forth fully herein.

54. Defendant, by and through management, retaliated against Plaintiff causing him to be deprived of an equal employment opportunity which adversely affected his employment status with his new employer because of his opposition to racially disparate treatment and his participation in the E.E.O.C. charge process.

55. The request by Walsh on July 12, 2003 not to have Johnson serve Continental in his capacity as a Sky Cap is the continuation of retaliatory hostile environment arising out of Plaintiff's opposition to disparate treatment on May 5, 1997.

56. Defendant, by Its actions has caused Plaintiff to be disparately impacted based on his race.

### COUNT IV - VIOLATION OF 45 U.S.C. § 151, *et seq.*

57. Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-56 above as if set forth fully herein.

58. Defendant, by and through Its' agents, failed to exert every reasonable effort to settle all disputes between it and its employees, including Plaintiff, when it failed to arbitrate Plaintiff's dispute concerning rates of pay, rules, and working conditions, or application thereof or otherwise.

9

### COUNT V - VIOLATION OF 49 U.S.C. § 40101, *et seq*.

59. Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-58 above as if set forth fully herein.

60. Katherine Churchill, Nick Petrov, Ryan Price, Peter Walsh, Jeff Willis and numerous other agents for Defendant, by their acts, subjected Plaintiff to unreasonable discrimination in violation of his right to fair, equal, and non-discriminatory treatment in working conditions by a certificated foreign air carrier.

### COUNT VI - BREACH OF CONTRACT

61. Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-60 above as if set forth fully herein.

62. On June 6, 2001 Katherine J. Churchill, acting as an agent for Defendant, caused Continental to breach the contractual Appeal Procedure agreement in effect at that time.

63. On October 17, 2001 Ryan Price, acting as an agent for Defendant and in concert with Churchill caused Continental to breach the contractual Appeal Procedure agreement in effect at that time.

64. The agreement, vested Plaintiff with the right to appeal any controversy arising out of the his employment or separation of employment with Defendant. Price denied Johnson his appeal rights.

65. Defendant, by and through other acts of management, have caused Continental to commit various violations of the contractual employment agreement entered into by the parties on or about June 8, 1994.

## VI.
## DAMAGES

67.    There are certain elements of damages, provided by law, that Plaintiff is entitled to have the jury in this case consider to determine the sum of money that will fairly and reasonably compensate him for his injuries and losses incurred as a result of Defendant's wrongful acts as set forth above.

68.    Plaintiff will respectfully request the Court and jury to determine the amount of loss he has incurred in the past and will incur in the future, not only from a monetary standpoint, but also in terms of good health and freedom from pain and worry. Specifically, Plaintiff prays that this Court:

    1.    Issue a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein violated Plaintiff's rights as secured by the Laws of the Constitution of the United States of America;

    2.    Issue a preliminary and permanent injunction enjoining Defendant, its agents and employees, from continuing to maintain the policies, practices, customs or usages which discriminate against Plaintiff because of race/national origin or otherwise deprive Plaintiff of his rights and privileges secured by Federal Law;

    3.    Award Plaintiff equitable and compensatory relief, requiring said Defendant to make Plaintiff whole, as authorized by statute far all pay and benefits he has lost, and will continue to lose, as a result of Defendant's wrongful conduct and unlawful discrimination against him;

    4.    Enter an order compelling Defendant to reinstate Plaintiff to the position

11

for which he qualified and/or grant such promotions for which he is qualified, or enter an order awarding pay to the Plaintiff in lieu of reinstatement at those positions;

5. Award Plaintiff all compensatory and punitive damages to which he has shown himself entitled in an amount to be determined by the Court and jury;

6. Award Plaintiff attorney's fees and costs of court, including expert fees, incurred by Plaintiff in this action;

7. Award Plaintiff such other and further relief as this Court deems just and proper; and

8. Grant Plaintiff a trial by jury for which Plaintiff has tendered the required fee.

**WHEREFORE, PREMISES, CONSIDERED,** Plaintiff prays that Defendant be cited to appear and answer herein, that upon final trial hereto Plaintiff recover his actual and exemplary damages, plus reasonable attorney's fees and cost of court and both pre- and post-judgment interest at the maximum legal rate, and for such other and further relief, both general and special, at law or equity, to which he may show himself justly entitled under all attaining facts and circumstances.

**A jury trial is demanded.**

Respectfully Submitted,

Stevan E. Johnson, *PRO SE*
P.O. Box 121
Boston, MA 02117

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this the ___6th___, day of May, 2004 service of summons and a true and correct copy of the foregoing instrument was upon Continental Airlines, Inc., through its registered agent CT Corporation Systems, at 101 Federal Street • Boston, Massachusetts • 02110, by depositing same in the United States Mail Certified with a Return Receipt Requested, in an envelope properly addressed and with sufficient postage affixed.

Stevan E. Johnson