IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| STEVAN JOHNSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-10902 (PBS) |
| ) | |
| ) | JURY TRIAL DEMANDED |
| CONTINENTAL AIRLINES, INC. ) | |
| ) | |
| ) | |
| Defendant. ) | |

*FILED IN CLERKS OFFICE 2004 MAY 26 P 2:25 U.S. DISTRICT COURT DISTRICT OF MASS.*

## PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

**COMES NOW**, Stevan Johnson, Plaintiff, complaining of Continental Airlines. Inc., Defendant, and for causes of action against it would show the Court as following:

### I.
### PARTIES

1.    *Plaintiff*, Stevan Johnson (Johnson), is a Black United States citizen. At all times material hereto, Mr. Johnson was an employee, as contemplated within the meaning of 42 U.S.C. § 2000e, *et seq*.

2.    *Defendant*, Continental Airlines, Inc. (Continental), is a Delaware corporation doing business in the State of Massachusetts, as a certificated foreign air carrier, recognized as a carrier within the meaning of 45 U.S.C. § 151, *et seq*. At all times material hereto, Defendant was an employer within the meaning of 42 U.S.C. § 2000e-(b), with more than 501 employees.

## II.
## JURISDICTION

3. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331, 1343, and 1337.

4. Plaintiff further invokes this Court's supplemental/pendant jurisdiction, pursuant to 28 U.S.C. § 1367, with respect to such claims as may arise from the same operative facts under the Constitution and Laws of the applicable States of the United States of America.

5. The employment practices Plaintiff alleges to be unlawful were at all times material to the facts made the basis of this lawsuit, being committed within the jurisdiction of the United States.

6. Plaintiff has timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("E.E.O.C.") and has received a determination refusing to proceed from said agency. At the conclusion of the E.E.O.C.'s administrative process, Plaintiff received a Right-to-Sue Notice from the E.E.O.C. dated February 18, 2004, informing Plaintiff he had 90-days within which to file a lawsuit against Continental Airlines, Inc. for alleged violations of Title VII of the Civil Rights Act of 1964, as amended.

## III.
## VENUE

7. Venue is appropriate and proper in Boston, Suffolk County, Massachusetts pursuant to 28 U.S.C. § 1391(c) because the Defendant is a corporation residing, upon commencement of this action, in the Judicial District of Massachusetts subject to personal jurisdiction of this Court.

## IV.
## FACTUAL ALLEGATIONS

8.  Plaintiff, Stevan Johnson ("Johnson"), is a Black United States citizen.

9.  Johnson submitted for consideration an application for employment with Continental Airlines, Inc. ("Continental") in Boston, MA dated May 16, 1994.

10. Johnson accepted Continental's offer of employment in Boston, MA, whereby, the parties entered into an "at-will" employment relationship (hereinafter "agreement") on June 8, 1994.

11. Johnson was continuously employed as a Field Services Agent from the inception of the agreement until the agreement was terminated on August 8, 2001.

12. The agreement alleged in paragraph 10 is governed by contract law.

13. After being terminated, Johnson attempted to have the termination of the agreement reviewed by means of Continental's Appeal Process promulgated in the "Working Together Guidelines" published by Defendant for distribution to Its' employees for the purpose of providing a tool to address work-related issues.

14. Continental admitted in McGuire v. Continental Airlines, Inc. 210 F. 3d. 1141 (CA10 2000) that the "Working Together Guidelines" Appeal Process is a contract.

15. The relevant provision of the "Working Together Guidelines" Appeal Process is incorporated into the various *Field Services Fly To Win Handbook*(s) for those employees classified as Field Service Agents.

16. As a condition of employment with Continental, Plaintiff, as a Field Services Agents, agreed to the following with Continental:

> "If I have a dispute with the company, I agree to use the Appeal Procedure for the resolution of any controversy

3

>       arising out my employment or separation from employment."

17. On October 17, 2001 Ryan Price-Managing Director Field Services Human Resources acted in concert with Katherine J. Churchill to deny Johnson the opportunity to appeal his August 8, 2001 termination based on an alleged claim of job abandonment.

18. The claim of job abandonment was merely a pretext asserted, presumably on the advice of legal counsel, to deny Plaintiff his right to an internal appeal.

19. Prior to the termination of the agreement on August 8, 2001 Johnson initiated proceedings on August 7, 2001 with Nick Petrov-Terminal Operations Director IAH for recovery of wages that were illegally withheld from him by Continental.

20. On August 7, 2001 Johnson complained, to Katherine Churchill-Human Resource Manager IAH, of discriminatory treatment he believed he was the victim of. This was in addition to a previous notice given to Churchill in a letter dated June 15, 2001.

21. Various federal statutes protected the conduct of Johnson described in paragraphs 19 and 20 from discriminatory retaliation, but notwithstanding, the next day August 8, 2001 Ms. Churchill terminated Johnson's employment agreement with Continental.

22. Ms. Churchill then attempted to conceal the retaliatory termination by ordering the termination date to be backdated to July 20, 2001. The order by Ms. Churchill to backdate the actual day of termination comes after Ms. Churchill had ordered on July 31, 2001 the processing of Company documents showing Johnson on a authorized leave of absence.

23. Johnson was terminated by Churchill the day after complaining to Churchill of discrimination while on a leave of absence authorized by Churchill.

24. The attempt to conceal the actual date of termination was done so that Johnson's August 7, 2001 conduct would appear to have occurred after Johnson was terminated, so Johnson's August 7th conduct could be claimed not to have been a consideration in the decision to terminate him.

25. Prior to his transfer to IAH, Johnson was under the direct-supervision of Peter Walsh ("Walsh") while working in BOS. Walsh issued Johnson a written notice of an alleged May 5, 1997 violation of Continental's attendance policy.

26. In response to this written notice from Walsh, Johnson filed an internal appeal on July 29, 1998 in an attempt to have his record expunged of this alleged attendance policy violation.

27. Johnson's belief that the May 1997 written notice was racially discriminatory was discussed during the April 4, 2001 meeting detailed *infra*.

28. After Johnson filed the appeal opposing Walsh's written notice, Walsh began to find alleged *un*-acceptance with Johnson's work performance at Continental.

29. The first of which was a written reprimand on August 6, 1998 just 8-days after Johnson filed his appeal opposing the written notice Walsh had issued Johnson for the alleged May 5, 1997 attendance violation.

30. Thereafter, Walsh issued Johnson three (3) more successive written reprimands within very comparatively close proximity to the first he had issued to Johnson on August 6, 1998.

31. Along with the increased frequency of alleged reasons to reprimand Johnson, Walsh simultaneously began making employment decisions that adversely affected Johnson's earnings.

32. On September 7, 1998 and September 8, 1998 Walsh was involved in decisions that denied Johnson the opportunity of utilizing a unique employment benefit called day-trading that made it possible for employees to increase their income.

33. Walsh also made the adverse decision not to award Johnson overtime he was entitled to for posted overtime needed on November 22, 1998 and November 23, 1998.

34. These and similarly hostile actions by Walsh lead to Walsh's superior Jeff Willis decision on July 1, 1999 to displace Johnson from his chosen work area, " to take [him] out of harms way",[1] where he was working under the direct-supervision of Walsh.

35. The reassignment by Willis was met with a verbal plea from Johnson on July 1, 1999 opposing Willis' decision.

36. Only after Johnson gave Willis written notice on July 7, 1999 of his opposition to the discriminatory reassignment did Willis reconsider his decision and allow Johnson to return to his chosen work area.

37. The written notice of opposition on July 7, 1999 was followed the next day by Walsh immediately issuing Johnson yet another written reprimand on July 8,1999.

38. Willis made his decisions alleged in paragraph 34 after Johnson had brought to Willis' attention a "nigger" joke that had been told to Johnson by a Continental employee that worked in Boston with Johnson. Willis took no action against the joke teller.

39. The acts of Willis and Walsh show racial indifference to Johnson and are alleged to be in violation Johnson's civil rights.

40. About two (2) weeks after Walsh's July 8th reprimand, Johnson's work location transfer with Continental from BOS to IAH became effective on July 26, 1999.

---

[1] This was the disturbing reason Jeff Willis gave to the Plaintiff on July 1, 1999 as to why he was moving Johnson from his chosen work area and reassigning him to a work area he opposed.

6

41. On April 4, 2001 Johnson met with a Human Resource manager at Continental's corporate headquarters at 1600 Smith Street in Houston complaining of Walsh. Johnson emerged from that 3-hour meeting believing that an internal investigation was going to be conducted as a result of that meeting to assess any action that may have been warranted.

42. Continental did not investigate Johnson's April 4, 2001 complaints against Walsh.

43. No action was taken against Walsh in response to Johnson's April 4th complaints.

44. When a White person complained about Walsh an investigation was conducted to substantiated the allegations, and found Walsh's behavior inconsistent with Company Policy.

45. Johnson applied for employment in Boston, MA on June 28, 2002 with a company which contracts to provide airport services. The particular company that Johnson sought employment with actually provided Sky Cap service to Continental in Boston, MA. Johnson was hired on the same day he applied and it was agreed that he was specifically hired for a position as a Sky Cap providing service to Continental.

46. However, before Johnson commenced work, Walsh requested via fax on July 12, 2002 that Johnson "not be assigned to work any functions for Continental Airlines," in his capacity as a Sky Cap.

47. The July 12, 2002 request by Walsh directly interfered with the agreement Johnson made with his new employer on June 28, 2002 in their business relationship.

48. The reason for the July 12, 2002 request by Walsh is rooted in Johnson's previous employment relationship with Continental.

49. A relationship that was terminated because of controversy that arose out of Johnson's opposition to Continental's employment practices.

50. It is alleged by agents for Continental that the termination of the agreement on August 8, 2001 between Continental and Johnson was the result of Johnson's alleged refusal to participate in Continental's Electronic Time & Attendance System ("eTA").

51. Participation in the eTA was claimed by Katherine Churchill, in a letter dated June 6, 2001, to be a "**requirement**" for continued employment with Continental.

52. Although among the 55,000 employees Continental claimed in 2001, Ms. Churchill, a White person, does not participated in the eTA, yet she is still employed.

53. Continental's deceptive claim that "Johnson was the only employee out of some 55,000 who refused to obey this rule of employment" is facially prejudicial because;

54. Continental has produced no evidence to substantiate the inflammatory allegation that Johnson refused to obey this new rule of employment.

55. In fact agents for Continental admit that Johnson advised Continental that he "will give his fingerprint," alleged to be a requirement to participate in the eTA system where participation in the eTA was claimed to be necessary for continued employment.

56. On February 22, 2003 a White Field Services Agent at IAH refused to give his fingerprint alleged to be a requirement to participate in Continental's eTA, but was able to continue his employment despite his refusal and ultimate non-participation in the eTA.

57. The White employee's opportunity for continued employment was possible because Continental offered the White employee an alternative employment opportunity that enabled him to maintain his active employment status with Continental.

58. Johnson, a Black Continental employee, was not offered the alternative employment opportunity that was offered to the White Continental employee whom was also counted among the claimed 55,000 Continental Airlines' employees in 2001.

59. Continental's Human Resources department knew or should have known that the White employee was being given an employment opportunity not offered to Johnson.

60. The alternative employment opportunity offered to the similarly situated White employee of Continental and not offered to Johnson is discriminatory on the basis of race.

61. The alternative employment opportunity not offered to Johnson deprived Johnson of an equal employment opportunity that enabled the White employee to avoid the same adverse impact on his employment status suffered by Johnson.

62. Johnson's termination of employment occurred while he and his co-worker at IAH, Pumphrey, were simultaneously on Company authorized leave(s) of absence(s), according to internal Company documents.

## V.
## CAUSES OF ACTION

### COUNT I - VIOLATION OF 42 U.S.C. § 1985

63. Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-62 above as if set forth fully herein.

64. Katherine J. Churchill and Ryan Price interfered with Plaintiff's civil rights secured by 42 U.S.C. § 1981 when they conspired to intentionally discriminated against him, when Johnson attempted to enforce his contractual appeal rights, in retaliation for his engagement in statutorily protected activity.

65. On July 12, 2002 Peter Walsh in concert with Plaintiff's employer at that time, caused him to be intentionally discriminate against in his pursuit of an advantageous business relationship.

## COUNT II - VIOLATION OF 42 U.S.C. § 2000e, *et seq.*

66.     Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-65 above as if set forth fully herein.

67.     Defendant, by and through management, retaliated against Plaintiff causing him to be deprived of an equal employment opportunity, which adversely affected his employment status with his new employer because of his opposition to racially disparate treatment and his participation in the E.E.O.C. charge process.

68.     The request by Walsh on July 12, 2002 arose out of Plaintiff's opposition to Walsh's disparate treatment in May 1997. Walsh's long held retaliatory animus towards Johnson was the cause of a continuously hostile work environment for Johnson.

69.     Defendant, by its actions has caused Plaintiff to be disparately impacted based on his race.

## COUNT III - VIOLATION OF 45 U.S.C. § 151, *et seq.*

70.     Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-69 above as if set forth fully herein.

71.     Defendant, by and through Its' agents, failed to exert every reasonable effort to settle all disputes between it and its employees, including Plaintiff, when it failed according to the contract, to arbitrate Plaintiff's dispute concerning rates of pay, rules, and working conditions, or application thereof or otherwise.

## COUNT IV - VIOLATION OF 49 U.S.C. § 40101, *et seq.*

72.     Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-71 above as if set forth fully herein.

73.     Katherine Churchill, Nick Petrov, Ryan Price, Peter Walsh, Jeff Willis and numerous other agents for Defendant, by their acts, subjected Plaintiff to unreasonable discrimination in violation of his right to fair, equal, and non-discriminatory treatment in working conditions by a certificated foreign air carrier.

## COUNT V - BREACH OF CONTRACT

74.     Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-73 above as if set forth fully herein.

75.     On June 6, 2001 Katherine J. Churchill, acting as an agent for Defendant, caused Continental to breach the contractual Appeal Procedure agreement in effect at that time.

76.     On October 17, 2001 Ryan Price, acting as an agent for Defendant and in concert with Churchill caused Continental to repudiate the contractual Appeal Procedure agreement in breach of the Appeal Procedure in effect at that time.

77.     The agreement, vested Plaintiff with the right to appeal any controversy arising out of his employment or separation of employment with Defendant. Price denied Johnson his appeal rights in breach of that agreement with the consent of the CEO. 8Defendant, by and through other acts of management, has caused Continental to commit various violations of the contractual employment agreement entered into by the parties on or about June 8, 1994.

## COUNT VI - VIOLATION OF 42 U.S.C. § 1981

78.     Plaintiff, hereby, incorporates by reference the allegations in paragraphs 1-77 above as if set forth fully herein.

11

79. Defendant, by and through management, intentionally discriminated against Black employees, including Plaintiff, with respect to assignments, promotions, compensation, working conditions, discipline, and discharge.

Defendant, by and through management, intentionally discriminated against and deprived such employees, including Plaintiff, the same benefits, privileges and protections as Whites under the law of the United States of America.

## VI.
## DAMAGES

80. There are certain elements of damages, provided by law, that Plaintiff is entitled to have the jury in this case consider to determine the sum of money that will fairly and reasonably compensate him for his injuries and losses incurred as a result of Defendant's wrongful acts as set forth above.

81. Plaintiff will respectfully request the Court and jury to determine the amount of loss he has incurred in the past and will incur in the future, not only from a monetary standpoint, but also in terms of good health and freedom from pain and worry. Specifically, Plaintiff prays that this Court:

   1. Issue a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein violated Plaintiff's rights as secured by the Laws of the Constitution of the United States of America;

   2. Issue a preliminary and permanent injunction enjoining Defendant, its agents and employees, from continuing to maintain the policies, practices, customs or usages which discriminate against Plaintiff because of race/national origin or otherwise deprive Plaintiff of his rights and privileges secured by Federal Law;

3. Award Plaintiff equitable and compensatory relief, requiring said Defendant to make Plaintiff whole, as authorized by statute far all pay and benefits he has lost, and will continue to lose, as a result of Defendant's wrongful conduct and unlawful discrimination against him;

4. Enter an order compelling Defendant to reinstate Plaintiff to the position for which he qualified and/or grant such promotions for which he is qualified, or enter an order awarding pay to the Plaintiff in lieu of reinstatement at those positions;

5. Award Plaintiff all compensatory and punitive damages to which he has shown himself entitled in an amount to be determined by the Court and jury;

6. Award Plaintiff attorney's fees and costs of court, including expert fees, incurred by Plaintiff in this action;

7. Award Plaintiff such other and further relief as this Court deems just and proper; and

8. Grant Plaintiff a trial by jury for which Plaintiff has tendered the required fee.

**WHEREFORE, PREMISES, CONSIDERED,** Plaintiff prays that Defendant be cited to appear and answer herein, that upon final trial hereto Plaintiff recover his actual and exemplary damages, plus reasonable attorney's fees and cost of court and both pre- and post-judgment interest at the maximum legal rate, and for such other and further relief, both general and special, at law or equity, to which he may show himself justly entitled under all attaining facts and circumstances.

**A jury trial is demanded.**

Respectfully Submitted,

Stevan E. Johnson,
P.O. Box 121
Boston, MA 02117

*PRO SE*

**VERIFIED BY MASSACHUSSETTS PUBLIC NOTARY:**

On this the ___26___ th day of May 2004.

Jayesh N. Patel - Notary Public
My Commission Expires: August 28th 2009

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this the ___26th___ day of May, 2004 service of a true and correct copy of the foregoing instrument was served upon Continental Airlines, Inc., through its registered agent CT Corporation Systems, at 101 Federal Street • Boston, Massachusetts • 02110, by depositing same in the United States Mail Certified in an envelope properly addressed and with sufficient postage affixed.

Stevan E. Johnson