UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEVAN JOHNSON, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No: 04-10902 (PBS) |
| CONTINENTAL AIRLINES CORPORATION | ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF (i) ITS
MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY
JUDGMENT AND (ii) ITS REQUEST FOR EQUITABLE RELIEF**

Defendant, Continental Airlines Corporation ("Continental"), hereby moves for dismissal of the newly filed Amended Complaint ("New Complaint") of *pro se* plaintiff, Stevan Johnson ("Johnson").[1]  In connection with this Motion, Continental further requests equitable relief from this Court preventing Johnson from litigating claims against it without Court permission.[2]

---

[1]   Johnson filed his Amended Complaint on or about May 26, 2004.  This pleading amends the action Johnson commenced on or about May 10, 2004, although it does not appear to differ in any material respect from the May 10 pleading.

[2]   This is now the second court action Johnson has brought against Continental in this Court, following five administrative actions he filed with the Equal Employment Opportunity Commission ("EEOC") in both Houston and Boston, and following one court action he filed, but never pursued, in Houston, Texas. (See Background, Part I, infra)  Where a litigant abuses process, this Court has the inherent power to dismiss his complaint and enjoin him from bringing further actions without court approval. (See Argument, Part I.A, infra)

**PRELIMINARY STATEMENT**

Johnson's newest complaint is nearly identical to the complaint he filed in this Court on October 15, 2003.[3] (Compare Complaint, Civil Action No. 03-11992 (PBS) with New Complaint, Civil Action No. 04-10902 (PBS))  It also regurgitates numerous matters raised by Johnson in the first three administrative charges he filed with the Equal Employment Opportunity Commission ("EEOC") in Houston, Texas. (See Exhibits 1A, 2A and 6A hereto)

Despite filing his original October 15 Complaint in this Court, Johnson apparently did not want to litigate here.  Instead, on November 12, 2003, Johnson moved to compel Continental to give him the opportunity to pursue his claims in Continental's internal appeal process.  Johnson claimed that Continental had improperly denied him access to the internal appeal process following the termination of his employment in August 2001.

On January 5, 2003, this Court granted Johnson's motion to compel and, on January 8, 2003, administratively closed his federal case.  Continental promptly began providing Johnson with an internal appeal.  Johnson proceeded through Step 1 and Step 2, but he steadfastly refused to go forward with Step 3.  Moreover, he filed no less than three motions with this Court during that internal appeal despite the fact that his case had been closed.[4]

At Step 3 of Continental's internal appeal process, Johnson's termination would have been reviewed by three employee peers (i.e., Employee Involvement Team ("EIT") members)

---

[3]  The only substantive difference appears to be Johnson's addition of an unsupportable breach of contract claim in Count V of his New Complaint. (See Background, Part I, infra; Argument, Part II.D, infra)

[4]  Johnson's three motions included (i) Motion For Court Appointed Arbitrator, (ii) Motion to Strike [an Exhibit] and (iii) Motion to Alter Order Denying Motion For Court Appointed Arbitrator. (See Civil Action No. 03-11992 (PBS), Docket #'s 20, 22, 24) They were all denied.

2

and two managers. (See Exhibit 4 hereto at 4)  If the Step 3 board did not reach a majority decision regarding Johnson's termination, he would have had the opportunity to proceed to arbitration. (Id.)

In this Court's March 15, 2004 Order denying Johnson's Motion for a Court Appointed Arbitrator, Johnson was warned:

> You should follow the appeal procedure in the contract forthwith or forfeit your arbitration rights.

(See Exhibit 5 hereto)

Continental gave Johnson extra time to request his Step 3 appeal.  He was only supposed to have 10 days, yet Continental gave him more than 30. (See Procedural Background, infra, ¶¶ 21-25)  Continental even "deemed" a comment Johnson made in a letter to Continental's outside counsel as a request for a Step 3 appeal. (Id.)  Continental then arranged a Step 3 hearing for Johnson on April 13, 2004. (See Affidavit of Christina Garcia ("Garcia Aff.") ¶¶ 2-3, Exhibit A thereto)  Yet, Johnson telephoned Continental and claimed he never requested the hearing. (Id. at ¶¶ 4-5, Exhibit B thereto)  Accordingly, Johnson's internal appeal terminated.  As a result, no right of arbitration is available.

Now, faced with Johnson's New Complaint, Continental requests judicial relief.  Indeed, five of the six claims in Johnson's New Complaint are identical to those in his original October 15 Complaint.  Johnson adds a sixth claim for breach of contract in his New Complaint (Count V), but the claim has a false premise:  by this Court's Order of January 5, 2004, Continental afforded Johnson his supposed contractual rights.  Yet, Johnson voluntarily rejected those rights.

Johnson has been asserting, and re-asserting the same claims against Continental for nearly 3 years now.  His incessant litigation must stop.

3

Pursuant to this Court's "inherent powers" (see Argument, Part I.A., supra), as well as Fed. R. Civ. P. 12(b)(6) or , alternatively, Fed. R. Civ. P. 56(c), Continental seeks entry of judgment in its favor on all counts in Johnson's New Complaint. Continental also requests equitable relief enjoining Johnson from filing further lawsuits without court permission. See Dee v. United States, 241 F. Supp. 2d 50 (D. Me. 2003).

## BACKGROUND

I.  **Procedural Background**

1. Continental terminated Johnson's employment on August 8, 2001. (See New Complaint, ¶ 11) The reason for Continental's action was Johnson's refusal to comply with Continental's new time-keeping system, the "eTA System." (Id. ¶¶ 50-51) The eTA System is a biometric time-keeping system to record employees' hours of work based on the use of a digital finger image. (See Affidavit of Katherine Churchill, ¶ 3) In essence, it replaces the "punch clock," and Johnson was one of thousands of employees who were required to participate. (Id. ¶¶ 7; New Complaint, ¶ 53) Johnson steadfastly refused to participate, however, and Continental deemed his refusal a job abandonment. (See Churchill Affidavit ¶¶ 4-9)

2. Johnson filed a charge of discrimination with the EEOC in Houston, Texas on January 4, 2002 ("First EEOC Charge"). (See Exhibit 1A hereto) In Johnson's First EEOC Charge, he alleged that Continental had not adequately investigated a complaint of discrimination he had made against his supervisor in Boston, Peter Walsh ("Walsh") for events occurring three to five years earlier from 1997-1999. (Id.) Johnson also alleged that, due to his race (black male), he was denied the opportunity to participate in Continental's internal appeal process to challenge his termination. (See Exhibit 1A)

4

3. On January 9, 2002, the EEOC dismissed this charge and issued Johnson a Notice of Right to Sue in federal court ("First Notice"). (See Exhibit 1B hereto)

4. Johnson then filed a second EEOC charge in Houston on January 29, 2002 ("Second EEOC Charge"). (See Exhibit 2A hereto) In his Second EEOC Charge, Johnson challenged Continental's attempt to "force" him to use Continental's eTA System, suggesting that the system was race-based. (Id.) As with his First EEOC Charge, Johnson alleged discrimination in Continental's decision to deny him an internal appeal challenging his termination. (Id.)

5. On March 18, 2002, the EEOC administratively closed this second charge, noting, "All information in [it] will be associated with the previously filed charge." ("Second Notice"). (See Exhibit 2B hereto)

6. Johnson filed a federal court complaint in the U.S. District Court for the Southern District of Texas on April 15, 2002, asserting discrimination and other claims arising out of the termination of his employment under Title VII and 42 U.S.C. § 1981. (See Exhibit 3A hereto) On September 12, 2002, the Texas court ordered that complaint dismissed without prejudice. (See Exhibit 3B hereto)

7. On November 13, 2002, Johnson filed a third EEOC charge ("Third EEOC Charge"), this time claiming that his employment had been terminated on August 8, 2001 in retaliation for his alleged complaint about discriminatory treatment on August 7, 2001. (See Exhibit 6A hereto)

8. On November 15, 2002, the EEOC dismissed Johnson's Third Charge, and issued Johnson another Notice of Right to Sue ("Third Notice"). (See Exhibit 6B hereto)

9. Johnson did not bring a new civil suit against Continental within 90 days of the Third Notice.

10. On or about March 18, 2003, Continental received Johnson's fourth EEOC charge, now from the Boston office of the EEOC. ("Fourth EEOC Charge") (See Exhibit 7A hereto). In his Fourth EEOC Charge, Johnson claimed -- as he did his Third EEOC Charge -- that he was fired in an act of retaliation one day after he complained about discrimination. (Id.) And again, as with his First EEOC Charge and Second EEOC Charge, Johnson claimed that Continental's failure to provide him with an internal appeal challenging his termination constituted discrimination. (Id.)

11. Johnson made one new claim in his Fourth EEOC Charge: that, in August 2002, Continental had allegedly retaliated against him by purportedly giving a negative reference to his new employer, Globe Ground North American ("GGNA"). (Id.) Johnson had not made this claim in his Third EEOC Charge, filed in November 2002.

12. On August 26, 2003, the EEOC dismissed Johnson's Fourth Charge and issued him a Notice of Right to Sue ("Fourth Notice"). (See Exhibit 7B hereto)

13. On September 5, 2003, the EEOC sent Continental notice that Johnson had attempted to amend his Fourth EEOC Charge. (See Exhibit 8A hereto) The EEOC informed Continental: "no action is required by you at this time." (Id.) On September 10, 2003, the EEOC dismissed the proposed amended charge and issued Johnson a notice of right to sue. (See Exhibit 8B hereto)

14. On October 15, 2003, Johnson brought suit in this Court (Civil Action No. 03-11992 (PBS)) alleging five causes of action under: (i) 42 U.S.C. § 1981; (ii) 42 U.S.C. § 1985;

6

(iii) 42 U.S.C. § 2000e *et seq.*; (iv) 45 U.S.C. § 151 *et seq.*; and (v) 49 U.S.C. § 40101 *et seq*. (See Exhibit 9 hereto)

15.     On November 6, 2003 Continental moved to dismiss Johnson's complaint or, alternatively, sought summary judgment on the claims therein. (See Civil Action No. 03-11992 (PBS), Docket #5)

16.     On November 12, 2003, Johnson moved to compel arbitration, claiming that Continental should be ordered to give him an internal appeal/arbitration. (Id. at Docket #8)

17.     On January 5, 2004, this Court granted Johnson's motion and, on January 8, 2004, administratively closed Johnson's federal court complaint. (Id. Docket #'s 17, 18)

18.     Continental then began Johnson's internal appeal, pursuant to the processes set forth in "Section 13" of Continental's employee handbook. (See Exhibit 4)

19.     Meanwhile, on January 5, 2004, Johnson had filed a fifth charge of discrimination with the EEOC in Boston ("Fifth EEOC Charge").  In his Fifth EEOC Charge, Johnson claimed that Peter Walsh, his supervisor at Continental from 1997-1999, interfered with his employment opportunities at GGNA and retaliated against him when, in the summer of 2003, Johnson was not promoted at GGNA and when, in October 2003, GGNA fired Johnson. (See Exhibit 10A hereto)  On February 18, 2004, the EEOC closed Johnson's Fifth EEOC Charge noting that Johnson already had filed a federal court complaint. (See Exhibit 10B hereto)

20.     Pursuant to this Court's Order of January 5, Continental convened a Step 1 meeting with Johnson on January 22, 2004.  By letter dated January 23, 2004, Continental denied Johnson's Step 1 appeal. (See Exhibit 11 hereto)

21.     Johnson made a timely request for review of Continental's Step 1 decision and, on February 11, 2004, Continental held a Step 2 hearing.  By letter dated February 16, 2004,

7

Continental denied Johnson's Step 2 appeal. (See Exhibit 12 hereto)  In that letter, Continental informed Johnson that under Section 13, he had ten calendar days to request Step 3 review. (Id.)

22. On or about February 22, 2004, instead of requesting a Step 3 appeal, Johnson filed in this Court a Motion for Court Appointed Arbitrator.  On March 15, this Court denied that motion, stating:  "You should follow the appeal procedure in the contract forthwith or forfeit your arbitration rights." (See Exhibit 5)

23. On or about March 10, 2004, Johnson filed in this Court a Motion to Strike, seeking to compel Continental to follow a prior version of its internal appeal process rather than Section 13.  On March 24, the Court denied Johnson's Motion to Strike.

24. Although Johnson had not filed a request for a Step 3 appeal within ten days of the Step 2 decision, Continental voluntarily extended the time for him to submit such a request.

25. Johnson still did not request a Step 3 appeal.  Rather, in a letter to Continental's outside counsel dated March 20, 2004, he stated that he intended to do so. (See Exhibit 13 hereto)

26. Continental decided to treat Johnson's March 20, 2004 letter as a request for a Step 3 appeal, and Continental scheduled that appeal hearing for April 13, 2004. (See Garcia Aff., ¶ 3, Exhibit A thereto)  Johnson then contacted Continental and stated that he never requested a Step 3 appeal. (Id. Exhibit B thereto)  Accordingly, Continental terminated the appeal process. (Id.)

27. On April 13, 2004, Johnson filed a motion in this Court seeking reconsideration of this Court's Order of March 15 denying him a court-appointed arbitrator.  On May 5, 2004, this Court denied Johnson's motion to reconsider.

28.     On May 10, 2004, Continental received service of Johnson's complaint herein, which Johnson amended on or about May 26, 2004.

## II.     Summary of Johnson's New Complaint

Johnson's New Complaint alleges five of the same causes of action set forth in his October 15, 2003 Complaint. (See Procedural Background, ¶ 14, supra)  In his New Complaint, however, Johnson asserts a sixth cause of action for breach of contract, claiming that Continental violated his contractual rights to an internal appeal. (See New Complaint, Count V, ¶¶ 74-77)

The allegations supporting Johnson's causes of action are the same he has been asserting since the time he filed his First EEOC Charge.  Specifically, Johnson first claims in his New Complaint that his employment was wrongfully terminated on August 8, 2001, and that he should have been given an internal appeal. (See New Complaint, ¶¶ 8-18)  Yet, Johnson already made these claims in his First EEOC Charge and in his Second EEOC Charge, both filed in Houston, Texas.[5] (See Exhibits 1A, 2A)

Next, Johnson claims that Continental terminated his employment on August 8, 2001, one day after he complained about discriminatory treatment concerning wages. (See New Complaint, ¶¶ 19-21)  Yet, this alleged wrongful conduct raised in Johnson's Second EEOC Charge and his Third EEOC Charge.[6] (See Exhibits 2A, 3A)

Then, Johnson claims that his supervisor, Peter Walsh, treated him in a discriminatory manner from 1997-1999 in various ways, including reprimands for attendance and performance

---

[5]   The claims should not re-ripen just because Johnson re-stated them in his Fourth EEOC Charge. (See Argument, Part II.A.1, infra)

[6]   Again, the claims should not re-ripen just because Johnson re-stated them in his Fourth EEOC Charge. (See Argument, Part II.A.1, infra)

issues and "day-trading." (See New Complaint, ¶¶ 25-43) Johnson had already placed the conduct of this same supervisor at-issue in his First EEOC Charge, however.[7] (See Exhibit 1A)

Next, Johnson claims in his New Complaint that he received a retaliatory employment reference from Continental in the summer of 2002 when he applied for a job with GGNA. (See New Complaint, ¶¶ 45-49) Thus, Johnson claims that Continental somehow interfered with his employment with GGNA. (Id. ¶ 47) We know from Johnson's Fifth EEOC Charge, however, that he worked for GGNA through the Fall of 2003. (See Exhibit 10A)

Finally, Johnson claims that on February 22, 2003, Continental offered an unnamed white employee an alternative employment opportunity to enable him to maintain his employment status without participating in the eTA System. (See New Complaint, ¶¶ 52-61) Johnson attempted to place this alleged discriminatory conduct at-issue in his proposed amendment to his Fourth EEOC Charge. (See Exhibit 8A) This alleged "discrimination" against Johnson supposedly occurred more than one and one-half years after his employment with Continental ended in August 2001.

## ARGUMENT

**I.    Johnson's New Complaint Should Be
Dismissed In Full As A Sanction For His Litigation Abuses Or,
Alternatively, For His Failure To Exhaust The Internal Grievance Process**

Johnson's litigation abuses begin with his filing of five EEOC charges and three civil complaints against Continental. They end with the events that occurred over the last five

---

[7] These claims were likely barred by the 300-day statute of limitations applicable to Title VII claims when Johnson raised them in his First EEOC Charge. In any event, the claims should not re-ripen just because Johnson re-stated them in his Fourth EEOC Charge. (See Argument, Part II.A.1, infra)

months, culminating in Johnson's failure to exhaust the internal grievance process he himself requested. As set forth below, Johnson's New Complaint should be dismissed in full.

    **A.    Johnson's New Complaint Should Be Dismissed In Full As A Sanction For His Litigation Abuses**

As the First Circuit has stated, federal courts "possess discretionary powers to regulate the conduct of abusive litigants." Cok v. Family Court of Rhode Island, 985 F.2d 32, 34 (1st Cir. 1993); see also Hull v. Municipality of San Juan, 356 F.3d 98, 102 (1st Cir. 2004) (affirming dismissal of complaint for fraud on court); John's Insulation, Inc. v. L. Addison and Assoc., Inc., 156 F.3d 101, 108 (1st Cir. 1998) (affirming dismissal of complaint for litigation abuses).

Indeed, a District Court has certain "inherent powers" which may be used to "vindicate the integrity of the proceedings in [a] case." John's Insulation, 156 F.3d at 108. In exercising its discretion, this Court should consider several factors, most notably here a "catchall" factor: "some other aggravating circumstance such as prejudice to the defendant, glaring weakness in the plaintiff's case, and the wasteful expenditure of a significant amount of the district court's time." Id. (quoting, Estate of Solis-Rivera v. United States, 993 F.2d 1, 2 (1st Cir. 1993)).

Here, these "aggravating circumstances" are present. *First,* there is a glaring weakness pervasive in every claim Johnson asserts against Continental. He refused to abide by a rule of employment at Continental and participate in the eTA System – a rule which applied to thousands of employees. Continental terminated Johnson's employment as a result. (See Affidavit of Katherine Churchill, provided herewith) This decision should not be subject to challenge. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991) (noting that courts should not "sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions").

11

*Second,* Continental continues to experience prejudice as a result of Johnson's incessant litigation.  Indeed, Johnson has spent the last three years filing five EEOC charges and three civil actions against Continental.  The EEOC dismissed all of Johnson's actions without a "reasonable cause" finding.  The Texas court dismissed Johnson's first civil action because he never pursued it.  Johnson also did not pursue the October 15, 2003 civil action he filed in this Court because he supposedly wanted to follow the internal appeal process.  Then, as Continental spent the last several months providing Johnson with the internal appeal process that might have led to arbitration, Johnson decided he did not want to pursue that process to its conclusion either.

Now, after voluntarily terminating the internal appeal process that he himself requested, Johnson purportedly wants to litigate the very same claims.  Equitable relief from this Court is required to stop Johnson. See Dee v. United States, 241 F. Supp. 2d 50 (D. Me. 2003).

For these reasons, Continental requests the dismissal of Johnson's complaint and the entry of an Order enjoining Johnson from filing additional claims without court approval.

> **B.     Alternatively, Johnson's New Complaint Should Be Dismissed For His Failure To Exhaust The Internal Grievance Process**

If this Court does not grant the relief requested in Part I.A, supra, Johnson's New Complaint should still be dismissed in full in light of Johnson's failure to exhaust the internal grievance procedure he wanted. See Brennan v. King, 139 F. 3d 258, 269 (1st Cir. 1998) (employee must exhaust internal process); see also O'Brien v. New England Tel. & Tel. Co., 664 N.E. 2d 843, 849 (Mass. 1996) (employee's failure to follow grievance process fatal to his claims); Berkowitz v. President & Fellows of Harvard College, 789 N.E.2d 575, 585 (Mass. App. Ct. 2003) (vacating order and further ordering dismissal of complaint for failure to exhaust internal grievance proceeding); Azzi v. Western Elec. Co., 474 N.E. 2d 1166, 1168-69 (Mass.

App. Ct.), further rev. denied (1985) (affirming dismissal of court complaint barring employee's claims where he had not exhausted administrative remedies).

Here, Johnson must bear the consequences of his abandonment of his internal appeal. His complaint should be dismissed for lack of exhaustion.

**III.    Alternatively, Each Of Johnson's Claims Should Be Dismissed Pursuant To Rule 12(b)(6) Or Rule 56(c)**

If this Court does not dismiss Johnson's New Complaint based on the arguments in Parts II.A or II.B above, all counts should still be dismissed for independent reasons.

**A.    Johnson's Title VII Claims Should Be Dismissed**

Johnson's New Complaint alleges discrimination and retaliation in violation of Title VII. (See New Complaint, ¶¶ 66-69)  All of Johnson's Title VII claims are procedurally barred by the statute of limitations or, alternatively, by Johnson's failure to timely file a civil complaint after notice from the EEOC.  The one Title VII claim that may be timely suffers from other procedural failures and fails to state a *prima facie* case in any event.

**1.    All Of Johnson's Title VII Claims Are Procedurally Barred**

Title VII required Johnson to file a charge against Continental within 300 days of the last alleged act of discrimination/retaliation. See 42 U.S.C. § 2000e-5(e).  Johnson filed his charge with the EEOC in Boston on March 14, 2003, making any claims arising before May 14, 2002 untimely.  In his EEOC Charge, the only conduct Johnson alleged occurring during the applicable limitations period was the alleged retaliatory reference Continental supposedly gave to GGNA in the Summer of 2002. (See Background, Part II, supra)  All other conduct alleged by Johnson in his Fourth EEOC Charge pre-dates May 2002, and should be dismissed as barred by

13

the statute of limitations.[8] See Ruffino v. State Street Bank and Trust Company, 908 F. Supp. 1019, 1040 (D. Mass. 1995) (timely retaliation claim does not make stale claims timely).

Even if not barred by the statute of limitations, this Court should still dismiss all such claims. Other than the claim of the alleged retaliatory reference, Johnson's Fourth EEOC does nothing more than re-state matters at-issue in his First, Second and Third EEOC Charges. Johnson did not file a civil complaint (or pursue the civil complaint he did file in Texas) addressing these claims within 90 days of receiving any of the first three EEOC Notices. Accordingly, they are now barred from court. See Perez Cordero v. Wal-Mart PR, Inc., 235 F. Supp. 2d 95, 103 (D.P.R. 2002) (on Rule 12(b)(6) motion, noting that claim would be subject to dismissal for failure to file within 90 days of EEOC notice).

The alleged retaliatory reference is also barred by Johnson's filing failures under Perez Cordero, however. Although Johnson mentions the claim for the first time in his Fourth EEOC Charge, the event actually pre-dated Johnson's Third EEOC Charge, meaning that it is deemed "within the scope" the EEOC's investigation of that charge even if Johnson did not specifically mention it therein. See Clockedile v. New Hampshire Dept. of Corr., 245 F.3d 1, 4-6 (1st Cir. 2001) (claim of retaliation will, as a general rule, be deemed "within the scope" of an administrative investigation of discrimination), abrogating in part, Johnson v. General Elec., 840 F.2d 132 (1st Cir. 1988). As such, Johnson is deemed to have adequately exhausted the claim through the EEOC, but he failed to file a civil suit within 90 days of the EEOC's Third Notice. Based on Johnson's filing failure, the claim is now barred. See Perez Cordero, 235 F. Supp. 2d at 103.

---

[8]  Indeed, because Johnson's employment ended in August 2001, his allegations regarding Continental's supposed disparate treatment of an unnamed white-male in February 2003 are irrelevant. (See New Complaint ¶¶ 56-61) They should be disregarded entirely.

### 2. Even If Not Procedurally Barred, Johnson's Allegation Regarding The Alleged Retaliatory Reference Fails To State A Claim

Johnson's allegation regarding the alleged retaliatory reference does not state a *prima facie* case for a violation of Title VII. To state a *prima facie* case of retaliation, a plaintiff must allege that he suffered an "adverse action" with a "material consequence" which has a "causal nexus" to his engaging in a protected act. See Higgins v. New Balance Athletic Shoe, 194 F.3d 252, 262 (1st Cir. 1999); Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996); Ligenza v. Genesis Health Ventures of Massachusetts, Inc., 995 F. Supp. 226, 232 (D. Mass. 1998).

In his Complaint, Johnson fails to allege any "adverse action" resulting from the retaliatory reference and he does not identify any "effect" of Continental's alleged statement to GGNA. (Cf New Complaint, ¶ 47) Johnson does not allege that GGNA refused to employ him. In fact, GGNA employed him for more than one year. (See Exhibit 10A (Fifth EEOC Charge))

In any event, in order to hold Continental liable for any "disadvantageous" work Johnson claims to have received with GGNA, he would need to allege that Continental exercised a certain level of control over his daily work with GGNA. See Orell v. UMass. Memorial Medical Center, Inc., 203 F. Supp. 2d 52, 62-63 (D. Mass. 2002) (discussing various factors and indicia of control required to hold third party liable under Title VII). Johnson has not done so.

For these reasons, Johnson's claim regarding the retaliatory reference should be dismissed pursuant to Rule 12(b)(6).

### B. Judgment Should Enter For Continental On Johnson's Claim Under 42 U.S.C. § 1981

Section 1981 forbids racial discrimination in the making and enforcement of contracts and provides for the equal enjoyment of "benefits, privileges, terms, and conditions of the contractual relationship." See 42 U.S.C. § 1981(a), (b). Continental's internal appeal process appears to be the

basis for Johnson's claim. (See New Complaint, ¶¶ 10, 13-14)  Johnson's attempt to bring this claim now, however, is no more than an effort to circumvent his past procedural failures. (See Argument, Part II.A.1 supra)

Johnson's Section 1981 claim should also be rejected because, at essence, it is now moot. See Maine State Building and Const. Trades Council, AFL-CIO v. U.S. Dept. of Labor, 359 F.3d 14 (1st Cir. 2004) (courts do not adjudicate moot claims).  After this Court's Order of January 5, 2004, Johnson had the supposed "contractual" remedy he claims to have been denied.  Yet, as detailed above, Johnson himself terminated that process.  For these reasons as well, this Court should dismiss Johnson's Section 1981 claim pursuant to Rule 12(b)(6).

   **C.**  **Johnson's Claim For A Violation of 42 U.S.C. § 1985
      Should Be Dismissed For Failure To State A Claim**

Section 1985 "provides no substantive rights itself." Great American Federal Savings & Loan Assn. v. Novotny, 422 U.S. 366, 372 (1979).  Instead, it is a "purely remedial statute" which gives "a civil cause of action when some otherwise defined federal right . . . is breached by a conspiracy in the manner defined." Id. at 376.  For there to be a cause of action under Section 1985, there must be a federal right alleged to have been violated which is not already addressed in some other comprehensive legislative scheme. See Lopez Rosario v. Police Department, 126 F. Supp. 2d 167, 174-75 (D.P.R. 2000) (citations omitted).

In his New Complaint, Johnson alleges that Continental violated 42 U.S.C. § 1985 when "Katherine J. Churchill and Ryan Price interfered with [his] civil rights secured by 42 U.S.C. § 1981" when they did not grant him an internal appeal in retaliation for his engaging in protected activity. (See New Complaint, ¶ 64)  He also alleges that the supposed retaliatory employment reference to GGNA constituted a violation of Section 1985. (Id. ¶ 65)

Both of these claims are subsumed in Johnson's Title VII claim, identified above, for

which Title VII already provides a comprehensive remedial scheme. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974). In Novotny, the Supreme Court held that Section 1985 "may not be invoked to redress violations of Title VII" because Title VII and Section 1985 do not involve two "independent rights." Novotny, 442 U.S. at 378; see also Lopez Rosario, 126 F. Supp. 2d at 174-75.[9]

Pursuant to Rule 12(b)(6), this Court should dismiss Johnson's Section 1985 claim.

### D. Johnson's Breach Of Contract Claim Should Be Dismissed

As noted in Part II.B above, the "contract" Johnson alleges Continental violated was his supposed right to an internal appeal. Under Massachusetts law, however, Johnson cannot state that claim because he failed to exhaust his internal appeal rights by failing to proceed to Step 3. See O'Brien v. New England Tel. & Tel., 664 N.E.2d 843 (1996). Indeed, like the plaintiff in O'Brien, Johnson "did not follow the grievance procedure, and that omission, as a matter of law, is fatal to [his] claim that [Continental] violated the terms of [his] employment." Id. at 695. For this reason, Count V of Johnson's New Complaint should be dismissed.

Alternatively, Count V should be dismissed because, even if Johnson was somehow found to have followed the grievance procedure, he has now had his internal appeal. He has now had the supposed contract rights he claims to have been denied; in fact, Continental gave Johnson greater rights than required under this supposed contract by giving him extra time to request a Step 3 hearing. For this reason, Johnson's claim for breach of contract should be dismissed as moot. See

---

[9] To the extent Johnson is using Section 1985 to claim a violation of Section 1981, Johnson should not be able to do so. As noted above, he brings a specific cause of action under Section 1981 itself (see New Complaint, ¶¶ 78-79), and the holding of the Supreme Court in Novotny has been extended to dismiss Section 1985 claims where a plaintiff asserts a violation of Section 1981 as well. See Jenkins v. Arcade Bldg. Maintenance, 44 F. Supp. 2d 524, 533 (S.D.N.Y. 1999) (RWS).

17

Maine State Building and Const. Trades Council, AFL-CIO, 359 F.3d at 14.

### E. Johnson's Railway Labor Act Claim Should Be Dismissed Pursuant To Rule 12(b)(6)

In his Complaint, Johnson asserts a claim under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, which is applicable to air carriers. See 45 U.S.C. § 181. He claims that Continental "failed to exert every reasonable effort to settle [his] dispute." (See New Complaint, ¶ 71)

The RLA does not apply in the context of Johnson's allegations. As the U.S. Supreme Court has recognized, the RLA applies to two types of cases in the context of "settling" disputes: "the first relates to disputes over the formation of collective agreements or efforts to secure them[;] . . . the second class [] contemplates the existence of a collective agreement already concluded, or at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one." See Elgin, J. & E.R. Co. v. Burley, 325 U.S. 711, 723 (1945).

The first type of dispute is not applicable here because there is no dispute over the formation of a collective bargaining agreement. The second type of dispute is not applicable either. As the Court stated in Elgin, the second type of dispute "relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case." Id. at 723. In essence, these are grievances that need to be "settled" by reference to the collective bargaining agreement and the use of a three-stage resolution procedure involving: (i) negotiation, (ii) conferencing and (iii) adjudication by a tribunal known as the Adjustment Board (if necessary). Id. at 725-28. The allegations in Johnson's New Complaint do not support such a claim.

In any event, Johnson's RLA claim is also subject to dismissal on statute of limitations grounds. A six-month statute of limitations applies to the assertion of a claim under the RLA. See Linder v. Berge, 739 F.2d 686, 688 (1st Cir. 1984); see also Robinson v. Pan American World Airways, Inc., 777 F.2d 84, 88-89 (1985). Yet, the alleged wrongful conduct Johnson claims to be a

violation of the RLA occurred in the summer/fall of 2001.  Johnson's RLA action, now filed more than two and one-half years later, is time-barred.

Johnson's RLA claim should be dismissed pursuant to Rule 12(b)(6).

### F.      Johnson's Claim For Violation Of 49 U.S.C. § 40101 Should Be Dismissed

Johnson also brings a claim under the Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et seq.* ("FAA"). (See New Complaint, ¶¶ 59-60)  The FAA also is not applicable here.

> Congress enacted the [FAA] for the purpose of centralizing in a single authority the power to frame rules for the safe and efficient use of the nation's airspace. . . . In the [FAA], Congress authorized the Secretary of Transportation to develop plans for and formulate policy with respect to the use of the navigable airspace. . . . Congress further directed the Secretary to assign the use of the navigable airspace under such terms, conditions and limitations as deemed necessary to insure the safety of aircraft and the efficient utilization of such airspace. Congress empowered the Secretary to prescribe rules and regulations to perform these functions. . . The Secretary of Transportation delegated to the Federal Aviation Administrator the authority to carry out its powers and duties regarding the safety and utilization of the nation's navigable airspace.

In re Gull Air, Inc., 890 F.2d 1255, 1256 (1st Cir. 1989) (citations omitted).

In short, the purpose of the FAA is to improve air safety, provide regulations for transportation and regulations to help prevent or reduce aviation accidents. See 49 U.S.C. § 40101; see also Zabala Clemente v. United States, 567 F.2d 1140, 1144 (1st Cir. 1978).  Yet, Johnson seeks to use the statute to claim discrimination by an air carrier towards an employee. (See New Complaint, ¶ 73)  Although courts certainly recognize that airline employers cannot discriminate against their employees, Title VII protect these rights. See, e.g., Fine v. Ryan Intern. Airlines, 305 F.3d 746 (7th Cir. 2002); Abdu-Brisson v. Delta Airlines, Inc., 128 F.3d 77 (2d Cir. 1997).  We know of no authority supporting the use of the FAA the way Johnson proposes.

Johnson's FAA claim should be dismissed for failure to state a claim.

19

## CONCLUSION

For the reasons above, Defendant's Motion to Dismiss Or, Alternatively, For Summary Judgment should be granted and judgment should enter in favor of Defendant on Plaintiff's Complaint. Further, this Court should grant Defendant's request for equitable relief and enjoin Plaintiff from filing any further complaint or motions in this Court without prior court approval.

>Respectfully submitted,
>
>CONTINENTAL AIRLINES, INC.
>
>By its attorneys,
>
>/s/: Jeffrey M. Rosin
>David S. Rubin, BBO # 546213
>Jeffrey M. Rosin, BBO #629216
>Epstein, Becker & Green, P.C.
>111 Huntington Avenue
>Boston, MA 02199
>(617) 342-4000

Dated: June 14, 2004

## CERTIFICATE OF SERVICE

I, Jeffrey M. Rosin, hereby certify that, on this 14th day of June, 2004, I served a copy of this pleading by First Class Mail to *pro se* plaintiff:

>Stevan E. Johnson
>1421 N. Dunton Avenue
>Arlington Heights, IL 60004
>
>/s/: Jeffrey M. Rosin
>Jeffrey M. Rosin