UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVAN JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No: 04-10902 (PBS) |
| | ) |
| CONTINENTAL AIRLINES | ) |
| CORPORATION | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **AFFIDAVIT OF KATHERINE J. CHURCHILL**

I, Katherine J. Churchill, hereby provide the following information based on my personal knowledge and my review of corporate files and correspondence.

1.      I am currently employed for Continental Airlines ("Continental") in Houston, Texas as the Senior Human Resources Manager.  I have held this position for 4 years.

2.      Stevan Johnson ("Johnson") is a former Customer Service Agent for Continental.

3.      In the early spring 2001, Continental implemented a new system to electronically record employees' time and attendance ("eTA System").  To implement the eTA System, each employee must provide a thumb image, which enables each employee to "punch-in" and "punch-out" from work using a state-of-the-art biometric time clock.

4.      Johnson refused to participate and provide a finger or thumb image.  Accordingly, as explained in a June 1, 2001 Memorandum for Continental manager Robert N. White, Continental placed Johnson on an unpaid leave. A true and correct copy of the June 1, 2001 Memorandum to Johnson placing him on leave is attached hereto as Exhibit A.

xxx

5.      Johnson tried to appeal the decision to place him on the unpaid leave, but Continental informed him that the decision was not appealable. A true and correct copy of my letter to Johnson, dated June 6, 2001, is attached hereto as Exhibit B. As I wrote to Johnson on June 6, 2001: "an appeal board cannot change **Continental's** requirement for use of the biometric clocks, nor can they change **your** mind about utilizing the biometric time clock." (See Exhibit B) In my letter, I reminded Johnson that he was invited to provide the biometric image and return to work. (Id.) In addition, I gave him written information to allay any concerns he had about the security of the eTA System. (Id. at Attachments) I also gave him the name of Continental's technology manager, Andy Zamborsky, and offered to set up a call between them so that Johnson could get answers to any questions he had. (Id.) Finally, I informed Johnson that he had 10 days to submit a written decision as to whether he planned to return to work and comply with the eTA System and warned him that Continental would take appropriate action if he failed to appear. (Id.)

6.      On June 18, 2001, Continental received a letter written by Attorney James Davis and dated June 15, 2001. A true and correct copy of the letter we received is attached hereto as Exhibit C. Attorney Davis' letter made several inflammatory accusations about the eTA System. (See Exhibit C) He also wrote that Johnson would be providing his fingerprint but "reserves the right to challenge its use for _any_ reason." (Id. at 2)

7.      On June 19, 2001, Counsel for Continental responded to Attorney Davis' letter and a true and correct copy of the letter written to Attorney Davis is attached hereto as Exhibit D. In this letter, among other things, Continental informed Attorney Davis that it would not make a special arrangement for Johnson when it had responsibility for 55,000 employees. (See Exhibit

D) Johnson was **the only** employee who refused to participate in the eTA System to my knowledge at that time.

8.    Johnson did not return to work to have his finger imaged. On July 10, 2001, I wrote to him informing him that Continental would not hold open his position. A true and correct copy of my July 10, 2001 letter is attached hereto as Exhibit E. As set forth therein, we gave Johnson until noon on July 20, 2001 to submit his biometric image and informed him that if he failed to comply, he would be deemed to have voluntarily resigned. (See Exhibit E hereto)

9.    Johnson did not show up. Nor did he show up despite further promises to me to do so on July 30, 2001 and August 8, 2001. Following that, I directed our administrative department to discharge him with an effective date of July 20, 2001 in light of his failure to meet that original deadline.

10.    On August 16, 2001, Continental received a letter from Attorney Davis, inquiring about Johnson's status. A true and correct copy of the letter we received from Attorney Davis is attached hereto as Exhibit F.

11.    On August 17, 2001, Continental responded to Attorney Davis to inform him that Johnson's employment had been "administratively terminated" as a "no show, voluntary quit." A true and correct copy of Continental's August 17, 2001 correspondence is attached hereto as Exhibit G. As set forth therein, Johnson had failed to show up for work for approximately two months and even failed to show up after an attorney representing Johnson had promised that he would. (See Exhibit G)

12.    Attorney Davis wrote back to Continental on August 29, 2001, claiming that Continental had misunderstood Johnson's intentions and that he thought his client "was to be allowed the opportunity to image with Continental." A true and correct copy of the August 29,

3

2001 letter received from Attorney Davis is attached hereto as Exhibit H. While Attorney Davis claimed that Johnson had been waiting for Continental to provide him with information to allay his security concerns (see Exhibit H), I had already provided him with this information and given him a resource to contact at the Company.

13.    Johnson sought to use Continental's appeal procedure to contest Continental's decision, but that process was not available to him. A true and correct copy of Continental's September 3, 2001 letter to Johnson informing him as much is attached hereto as Exhibit I. Additionally, a true and correct copy of Continental's letter to Johnson dated October 17, 2001 summarizing the entire events that occurred from the beginning of June 2001 is attached hereto as Exhibit J.

14.    It is my understanding that in the summer of 2002, a Continental General Manager in Boston was contacted by GlobeGround North America, LLC ("GGNA"), a company that provides Sky Cap services to various airlines, including Continental. Sky Cap services include assistance with luggage, transportation to flight gates (e.g., by wheelchair or cart) and other miscellaneous work to ensure the smooth transition of passengers to and from their flights. The Manager referred GGNA to a "hotline" for employment verification, which is Continental's policy. Continental requested only that Johnson not be assigned by GGNA to work for Continental, but gave no reason.

Signed under the penalties of perjury this 5 day of November, 2003.

Katherine J. Churchill

4

# Exhibit A

June 1, 2001

To:         Stevan Johnson

From:       Bob White

Subject:    Suspension

This will advise you that are suspended from duty effective 6/1/01. The reason for this action is your refusal to have you finger "imaged". This imaging process is being used by Continental Airlines to indicate when you are on duty and when you have left. Basically this is the process used to determine your hours of pay. This method is in common use in our Hub locations and will be in wider use in all of our Field Service locations in the near future.

You requested that Lonnie Chambers ( Employee Involvement Team Member) be with you during this discussion. Unfortunately Mr. Chambers hours were not conducive to our conversation. I offered to call another E.I.T. Representative in on your behalf. You refused this offer.

You will remain on unpaid suspension until this matter is resolved. In the event you continue to refuse to comply with this Company directive it is possible your employment will be discontinued.

In the event you feel this action is contrary to Company Policy, you may appeal this action. Should you wish to avail yourself to this process forward your request to:

Mr. Nick Petrov
Director Terminal Operations
Continental Airlines
P.O. Box 60307
Houston TX 77205
281-553-1947

The information for submitting an appeal is contained in the Fly to Win Handbook.

Robert N. White
Assist Director
Houston Terminal Operations

Stevan Johnson
Customer Service Agent
Houston Terminal Operations

6/1/01
1255

# Exhibit B



Continental Airlines, Inc.
Post Office Box 60307
Houston TX 77205

June 6, 2001

Mr. Stevan Erik Johnson
1100 Langwick Dr. #1905
Houston, Texas 77060

Dear Mr. Johnson:

Thank you for speaking with me today. As promised, this letter is to re-cap our discussion.

Your request for first level appeal was received in our office for review. I regret to inform you that an appeal is not appropriate in this situation. Appeals are available only in those cases where inappropriate application of policy has occurred or disciplinary action taken. In your case, the unpaid leave that you began on June 1, 2001 was necessitated by your refusal to take the actions necessary to utilize the time clocks at IAH Terminal Operations. Specifically, your refusal to utilize the biometric time clocks which are a required component of punching in.

As we discussed on the phone, an appeal board cannot change Continental's requirement for use of the biometric clocks, nor can they change your mind about utilizing the biometric time clock. Further, as we discussed, at any point through this process, you've been invited to come provide the biometric image and return immediately to work. During our conversation, you indicated to me that both Nick Petrov and Bob White had made this option very clear.

During our conversation, you expressed concerns about the security of the biometric image. The information I provided to you over the phone is included in the attached information. I've also attached other general information. I hope that this will help to allay your concerns. Let me reiterate to you my offer to schedule a conversation between you and Andy Zamborsky. Andy is the technology manager responsible for the eTA project and would also be able to provide "expert" answers to your questions.

Mr. Johnson, it's my hope that you will reconsider your decision. If you do, please contact us immediately and your return to work will be expedited. If you do not change your decision, we would request that you provide your final decision to us in writing within 10 days of receipt of this letter. Lacking that written decision, we will assume that your decision is final and take the appropriate resulting measures.

Again, thank you for speaking with me. If I can provide any additional information to help with your decision, please contact me at (281) 553-8435.

Sincerely,

Katherine J. Churchill
Sr. Manager Human Resources

cc:    Ryan Price – Managing Director Human Resources
       Mark Erwin – Sr. Vice President Field Service

Attachments:        eTA Q&A
                    eTA Airport Services Division presentation
                    eTA Fact Sheet

# *eTA* QUESTION AND ANSWER SHEET

*Phase One Features – Starting date of 02/16/2001*
- Payroll Parallel – Both systems running concurrently to compare hours
- Replace CAPS – After system passes testing
- Employee Kiosks – Turned on after system replaces CAPS
  - Worked hours review on the kiosk
  - Accrued hour review on the kiosk

*Phase Two Features – Targeted start date of 07/01/2001*
- Employee Kiosks – You will be able to do:
  - Online shift bids
  - Online vacation bids
  - Online day and shift Trades
  - Online Overtime sign-up
- New sick call line – Call a standard sick call line
  - 1-877-324-SICK

Q.    What is the new Time and Attendance System?
A.    It is a new advanced administration system intended to replace CAPS.

Q.    Why are we replacing CAPS?
A.    We want to offer you the latest and greatest technology possible. The new system gives Continental the opportunity to develop new applications such as online bidding, online overtime signup, online day trades and hour verification.

Q.    Do I need a computer at home to use the new features?
A.    No you do not. We will be placing employee kiosks into the breakrooms to access the new system.

Q.    Why do we use biometric clocks?
A.    The biometric clocks are much more stable than the current CAPS clocks. They also offer a higher level of security for the new system.

Q.    Are these fingerprints, and can they be used to identify me?
A.    These are not fingerprints. The biometric scan converts an image of your finger into an encrypted number. That number is what is stored on the server in a secured room at headquarters. Those numbers are absolutely meaningless to anyone and you cannot be identified by it.

Q.    So how do I swipe into the new system?
A.    You swipe your Continental Airlines identification badge first and then place your finger on the reader window. Please place your finger in the same position on the reader as when you enrolled. To clock in without your identification badge, first hit the A button (In/Out) and then type you employee number in and hit enter. You will then be prompted to place your finger on the reader.

*1) Distributed in WED/SAT Briefing*
*2) Posted*
*3) Given in Group Room I/A Shuttles*

Q.    Why do we still have to swipe?

A.    There is a clock that we could have used that allows you to use your finger alone, but that clock only holds 150 employees worth of information. We have use the current clocks because each hub has over 1,000 employees.

Q.    How do I know if the clock took my swipe?

A.    As long as you do not receive the "Invalid Finger" error, it took your swipe. If you get an error that indicates "ID NOT IN TERMINAL QUERY SENT TO HOST", please swipe again. This means your template is not in the clock. After your template is loaded you will receive the message, "Templates loaded, Please swipe again". If you receive a message indicating, "clocked outside of schedule", it is still a good swipe. If you have any other problems with the clock, please follow the current procedures and see your administration office or supervisor.

Q.    I heard that both people have to be present to do an online day trade?

A.    Both people do not have to be present. An employee can submit a daytrade to another employee online. When the other employee logs onto the system, they can either accept or decline the daytrade.

Q.    Can I post a day trade for someone to pick up?

A.    Currently the system requires that you already have your trade parameters arranged ahead of time. We are looking at reprogramming the system to allow a bulletin board of available trades online so people can view these to pick up hours.

Q.    What workrules have changed in the new system?

A.    No workrules have changed. The system applies your current rules in the Fly to Win handbook.

Q.    What if I have questions not answered here?

A.    Call me, I will answer your questions and list it on the next Q and A sheet.


We want to hear from you what type of future communications you would like. Please call me at (216) 501-5127 with your ideas so we can better communicate with you.

Regards,

Andrew Zamborsky
Sr. Manager Technologies, Time and Attendance Systems
(216) 501-5127
AZAMBO@COAIR.COM

# eTA Fact Sheet

- What is the new time and attendance system?
  - It is a user-friendly Windows based system from Advanced Systems International in Southfield Michigan, near Detroit.
    - Other clients include
      - Sara Lee
      - Chrysler
      - Amazon.Com
  - The system was developed for Continental Airlines instead of adapting another industry's time and attendance system to our needs
  - The system will be rolled out in the following phases:
    - Phase One – Field Services in Cleveland, Houston and Newark
      - February 2001 – June 2001
    - Phase Two – Cargo and Field Services in the outstations
      - Beginning July 2001
- Will this system replace CAPS?
  - Yes
- What advantages does ATServer offer the employee?
  - Employee Kiosks will allow the employee touch screen access to the following online options:
    - Review accruals (Phase One)
    - Review daily worked hours (Phase One)
    - Shift and day trades (Phase Two)
    - Sign up for overtime (Phase Two)
    - Shift and vacation bidding (Phase Two)
    - Potential of implementing other Continental Airlines applications on the kiosk
      - Benefit/Human resources
      - E-ticket
      - Online uniform ordering
      - Company information
  - The Advanced Systems International Laborview product will allow extranet access to the kiosk applications for access from home (Internet connection is required)

Posted in
S Bulletin
Board Area

late Feb - march
and Distribution inBags

- o Convenient employee sick call line
  - ▪ 1-888-324-SICK
- o New technology clocks
  - ▪ Increased stability over current CAPS clocks decreasing annoying outages
  - ▪ Biometric for increased security and prevents clocking errors
    - • Biometric technology utilizes the width and depth of the ridges in your finger to create a unique identification number that is 712 digits in length.
    - • Potential to use biometrics for other applications requiring high security
      - o 401K modifications and enrollment
      - o Benefit selections
      - o Beneficiary selections
      - o Name and address changes
      - o Picking up paychecks
      - o Online reservations
  - ▪ Same technology utilized by United Airlines and United Rentals
- • Behind the scenes
  - o Single server as opposed to 68 separate CAPS servers
    - ▪ Easier to upgrade
    - ▪ Easier to maintain
    - ▪ Will save Continental Airlines millions of dollars in maintenance costs
  - o Easier to use than CAPS
    - ▪ Allows administration departments more time to attend to your needs
  - o Flexibility
    - ▪ System can be upgraded if performance slows
- • What is the implementation Timeline?
  - o We will roll out different pieces of system functionality though 2001
  - o Implementation has begun in Cleveland (February 2001)
  - o Houston will be scheduled after successful completion in Cleveland
  - o Newark will follow Houston
  - o Outstation implementation will follow the hubs

# *eTA*

## Electronic Time and Attendance

### Airport Services Division

**June 6, 2001**

# Continental Airlines

Work Hard.
Fly Right.SM

## Continental

# *eTA* - Overview

As Continental continues to make improvements to customer systems, such as *EService*, *EZR*, and *Eticket*, it is just as important that we update those systems utilized by our employees.   Effective January 1, 2001 we will implement two new systems, *ePass* and *eVacation*, allowing employees to utilize the eticket process for buddy and vacation pass travel.

The latest employee related technology to be updated is the time and attendance system. A new electronic time and attendance system, *eTA*, will replace the current CAPS system allowing more flexibility to employees.

The reasons for replacing CAPS include:

> Outdated technology

> Not user friendly

> Slow to upgrade and make changes

> Outages can be lengthy

> Many different applications throughout the system for administrative tasks

> Does not allow new "state of the art" technologies to be provided to employees

> Costly to operate and maintain

June 6, 2001

2

# eTA – New Electronic Time & Attendance          Continental

Continental, in conjunction with Advanced Systems International (ASI), has utilized state of the art technology to develop this new electronic time and attendance system. The system provides a user friendly front-end making it easier for both the user and the system administrator. Benefits of the new system include:

Λ Advanced window based applications

Λ Employee friendly graphical user interface

Λ Administration can correct errors more efficiently, allowing them more time to meet employee's needs

Λ One system to complete all administrative tasks

Λ Instant processing of payroll

Λ New employee kiosks for online access

Λ Advanced clocking system utilizing biometrics

Λ Reduction of payroll errors

Other Fortune 500 companies utilizing systems from ASI include:

Λ Sara Lee

Λ Chrysler Corporation

Λ Amazon.com

# *eTA* - Kiosks

## Continental

Our vision is to offer employee's "one stop" shopping at the *eTA* kiosk. The easy to use kiosk will provide touch screen technology and easy to read reports. Access to an employee's payroll and attendance information is quick and simple.



4

## *eTA* - Functionalities

**Continental**

The system will provide for a number of functionalities that today are either performed manually or not available to the employee.

Phase one functionality (available 2Q 2001 in hubs):

➤ View hours worked
➤ View accruals
➤ View day and shift trades
➤ Application of overtime rules

Phase two functionality (available 3Q 2001 in Cargo and Level 1/2 Stations):

➤ Sign up for overtime and view awarded overtime
➤ Submit shift and day trades
➤ Submit shift and vacation bids
➤ Qualify for FMLA

Due to the flexibility of the new system, it is anticipated that other employee information will eventually be accessible via *eTA* kiosks.

Phase three future functionality (2002):

➤ Benefits selections
➤ Personal information changes
➤ Eticket functions
➤ Human Resource integration

June 6, 2001

5

# *eTA* – Proposed Station Rollout

 Continental

## *Cleveland:*
February 9th
February 16th
March 15th
April 1st

Clocks installed, registration of employees begins
New system begins paralleling current CAPS
Parallel complete
Sign off of new system

## *Houston:*
Following a successful Cleveland Implementation

## *Newark:*
Following a successful Houston Implementation

## *Cargo:*
2nd and 3rd Quarter 2001

## *Level 1/2 Stations:*
3rd Quarter 2001

## *All Other Stations:*
4th Quarter 2001

June 6, 2001

6

# *eTA* - Biometric Clocks

**Continental**

Continental has chosen to utilize biometric clocks to enhance the accuracy of the new time and attendance system. These new clocks provide the following benefits:

⋏ Ability to swipe in without employee identification card

⋏ Allows for customized messages to employees

⋏ Possible integration to Staff Manager for work assignments

⋏ Increased reliability of clocks, as they are monitored for outages 24/7



June 6, 2001

7

*eTA* – Application of Work Rules                                    Continental

As the new system was being developed addressing the accuracy and consistency of employee work rules and the application of these work rules was very important.

➢ *eTA* utilizes our current work rules as the basis for development of the system

➢ Changes will be made centrally, allowing for consistency at all stations

Control Module, Inc., has been a leader in the design and manufacture of automated data collection and security products and systems since 1969. CMI products are used around the world for applications such as time and attendance tracking, inventory control, work in process management, access control, and others.

Major corporations such as <u>Continental Airlines</u>, <u>United Parcel Service</u>, <u>Southwestern Bell</u>, <u>British Aerospace</u>, <u>Roadway Express</u>, <u>American Stores</u>, <u>The May Company</u>, and <u>Northwest Airlines</u> rely on CMI solutions to help automate their operations. Control Module is universally recognized as an industry leader; it has attained this position through its commitment to quality, technological innovation, and the ability to give customers the custom-designed features and functions they need.

Control Module is privileged to employ an engineering and design staff that is one of the finest in the industry. CMI holds numerous patents and has pioneered the development of products such as:

- ✖ <u>SaveTime</u>™ modular data collection terminals
- ✖ LINC Ethernet & Token ring support
- ✖ Keyboard decoder wedges
- ✖ Bar code readers
- ✖ Wiegand readers
- ✖ Proximity readers
- ✖ Multi-drop terminal networks
- ✖ Multimedia (barcode / magnetic) terminals
- ✖ SecurCode II™ forgery-proof bar code
- ✖ Holonetics™ high security readers
- ✖ Access control systems



CMI's development philosophy focuses on the design of standard, modular products which can be combined to provide solutions for specific (and often unique) customer requirements in a timely and cost-effective manner. CMI's leadership in technological innovation enables it to produce products that are superior in function, performance, and reliability.

Control Module's pre- and post-installation product support is second to none. Support programs can be tailored to meet any user's particular needs, up to and including availability 24 hours a day, 7 days a week.

CMI products are used throughout the world and in virtually every industrial and public sector environment. Control Module works closely with a wide variety of strategic partners and value-added resellers. These companies specialize in integrating total system solutions which combine CMI hardware with their own software applications. End users thus enjoy the ideal combination of state-of-the-art data collection technology, application software designed for their specific requirements, and complete hardware and software support.

While the enrollment/verification system is state of the art, the information used in devices is not compatible with AFIS identification systems in a number of important ways.

### Resolution

The CMI verification system relies on the finger image ridges to determine correct and incorrect finger image matches. The resolution required to clearly define the ridge pattern is generally about 160 DPI (dots per inch). This resolution, used by CMI, is much lower than that required by AFIS systems which is (500 DPI).

### Image Size

CMI devices provide a cost effective identification solution by making use of small optical and solid-state sensors. The active area of these sensors is typically less than ¾" x ¾". AFIS identification systems rely on a full measure of the fingerprint as shown below, typically 1" x 1 ½". The difference in these image sizes is shown below.

### Image Enhancement

The CMI verification suite is based on the most advanced image enhancement tools available. The philosophy behind the image processing is to preserve and enhance the ridge pattern from a person's finger. Other features such as scars, cuts, or creases are removed since they can appear or disappear from employee's finger. Minutia-based comparison techniques use scars, for instance, as part of the comparison. Since these artifacts are removed during CMI enhancement and compression, the mathematical representation that serves as a CMI template is unsuitable for AFIS identification systems.

**AFIS Compatible Imagery**



**A Comparable CMI Template**



### Stored Template Image

The CMI locally stored template image is stored as a 350-byte number and means absolutely nothing to anyone but the reader. In addition the template is stored only at the reader and cannot be obtained.

EMPID FINGER
001   3
TEMPLATE

*Actual Finger Image Template*

01000000000000000000000000020200000000000000000000000000000000003000003?0?=055>?970?5077=??40?90?00000000008080683425482=321
;1302006>28946::5<258<0231<0:05=?575>;751;2;1589=:>?54:<968:8579<<=22<1579347:>=7>;:<965713;1=2><53;=964;>3219<61>;=36;:=;66;3=8
5=8?0743:=<:?77>;=5=6>775696=76=;458:=92494<?1>4???;;=5=92::<5:;4=:5;6<82552697=91=6>9673=9=;2<9048;4;74;959>672>95499=?21743;2
5734954=2350==3<3S>>?474;:9=4>>96485=6779;<;>4734;156<<6;15>:::==>>;77;:9=<>2704;1>32191<92<?=9121;564;3572<1=:>771;95<4>476<8>
395=><0:4=47737:;96>;07>3;1<>>16749>411<;77743>6<341;4=4:15;::=5<>972391<;20915;;<661361<160;85:2=952:;7339=<0>070385=422301:<=0
6>5>2:150:25138=<8>46>:19;8>;53190<066352==52:95128540:74110904<6000000000


CONTROL MODULE INC.

# Exhibit C

## THE LAW OFFICES OF JAMES R. DAVIS, P.L.L.C.

MELLIE ESPERSON BUILDING, 815 WALKER ST., SUITE 1640 ✦ HOUSTON, TEXAS 77002
TELEPHONE: (713) 721-0500 ✦ FACSIMILE: (713) 533-1419
WEBSITE: WWW.JAMESDAVIS.ORG
EMAIL:attorney@houston.rr.com

**RECEIVED**

**JUN 1 8 2001**

HUMAN RESOURCES-IAH

JUNE 15, 2001

Re:    Request for Hearing and Notice of Appearance of Counsel; Notice of Title VII violation
and 13th Amendment Violation by Continental Airlines.

Continental Airlines, Inc.
Attn: Katherine J. Churchill
P.O. Box 60307
Houston, TX 77205

Sent Via Certified Mail/RR
Requested: 70993220000042303196

Dear Ms. Churchill:

I represent Stevan Erik Johnson. It is my desire to <u>appear</u> in your presence on his behalf. I have been retained to prevent my client from entering into an arrangement with Continental Airlines which might be violative of his rights as a citizen. I have advised my client to agree to allow your organization to fingerprint him since his job was overtly threatened for his failure to do so. The tone of the letter denying his right to appeal was extremely disturbing. The letter incorrectly denied him an opportunity to appeal a disciplinary determination affecting his job and pay.

In Section 12 of the "Fly to Win Handbook" it states the grounds to perfect an internal appeal. My client effectively requested an appeal. It was denied due to an alleged absence of inappropriate application of company procedure or an inappropriate corrective action. I am fascinated that without a hearing that the corrective action could be upheld without listening to any evidence. Once again, my client request that the Appeal Procedure be honored.. This is Stevan Johnson's second request for hearing. My client believes that the application of fingerprinting as applied to employees is illegal and

offensive of all basic human rights an American in connection with the 13th Amendment. My client believes that the denial of his original request for appeal was based on no merit. My client strongly objects to the appropriateness of the corrective action as applied to Stevan Johnson. WE request that the hearing be held within 10 days of receipt of this request as your own procedure requires.

In fact, my client was the subject of a serious disciplinary action undoubtedly deserving of review. His salary has been summarily stripped, his reputation tarnished, and future in this organization jeopardized is caused at its root by Continental's Orwellian attempt to saddle its employees with Continental's responsibility to simplify and streamline payroll. What is next? Possibly DNA transfers? Retinal scanning? Personal body fluid samples?

In light of Continental's commitment to civil liberties and freedom under the system in which we thrive, I am sure Continental will stop behaving in such a neo-Hegelian manner. My client will give you his fingerprint, yet reserves the right to challenge its use for *any* reason by Continental Airlines, its agents, subsidiaries, parent or assigns.

My client would like to have notice of any breach in security where Continental or the responsible agency storing fingerprint data occurs. Continental should keep in its file this formal letter of protest and make it available as evidence at a later time if his fingerprints are misused by Continental Airlines, its subsidiaries, parents, agents, or assigns. Mr. Johnson has other requests to protect his security and reputation which will be discussed during mediation. It must be in the organization's best interest to mediate a settlement, so that all aggrieved employees may be heard. Do all employees get to hear about this in the company newsletter?

My client requests mediation immediately to help resolve this matter. It is in the best interest of Continental Airlines to deal with these legitimate fears of its employees and not be so dismissive of their legitimate concerns. My client values his employment with Continental Airlines. Nevertheless, it is his concern that Continental Airlines values the bottom line and efficiency more than its employees privacy. All should be balanced. To what extent does Continental Airlines have the right to tell its employees to

submit to such invasive procedures? You could not make a man get on his knees and bark like an animal, so why does the organization do something more humiliating, demeaning, obscene and profane as treating its employees as criminals are routinely treated. There is no justifiable reason to invade your employees such as anti-terrorism methods. That could at least be legitimate. Continental is implementing this for its own convenience, without regard to the impact such procedures have on its employees, especially those of color. While the nation clamps down of privacy abuses, your organization seems gleeful in its attempt to fingerprint and catalogue its servants much like that of branding a head of cattle. More disturbingly, in the matter at hand your are asking your servant to place his head on The guillotine of invasion and humiliation. One must understand the racial implications of this branding process. My client sees possible action with the Commission under Title VII. Consider this notice.

In addition, the Texas Pay Day law is violated by Continental Airlines, Inc., insofar as it denies its employees wages due and owing. At the time the wages were earned there was no requirement that the imaging be done, yet my client's check was needlessly delayed for Continental's convenience and to punish my client.

Please call to coordinate a time for my appearance if possible. I will make myself available.

My client wants the following known to the organization and to be agreed to by the organization in writing as a solution to his appeal situation:

1. that he is imaging under economic coercion and against his free will.

2. that Continental Airlines pledges complete security with regard to my client's private "image" and that if the security is compromised that Continental will take ALL of the necessary steps, free of charge to client, to resolve any and all problems associated with said breach or misuse of confidential fingerprint

information.

3. that Continental will take a no negligence pledge regarding images.

4. that Continental will give a quarterly report on policies and procedures concerning confidentiality and breaches in security.

5. that Continental Airlines will give a use statement concerning what the limits of use should be concerning images for now and forever.

6. that Continental Airlines will tell exactly WHAT is being measured biometrically.

7. that this policy be signed by the head of Field Services Dept., Mark Erwin.

Sincerely,

James R. Davis, Atty.

ENCL/ June 6th Churchill Letter/ Request for Appeal/ June 1 Notice of Suspension



Continental Airlines, Inc
Post Office Box 60307
Houston TX 77205

June 6, 2001

Mr. Stevan Erik Johnson
1100 Langwick Dr. #1905
Houston, Texas 77060

Dear Mr. Johnson:

Thank you for speaking with me today. As promised, this letter is to re-cap our discussion.

Your request for first level appeal was received in our office for review. I regret to inform you that an appeal is not appropriate in this situation. Appeals are available only in those cases where inappropriate application of policy has occurred or disciplinary action taken. In your case, the unpaid leave that you began on June 1, 2001 was necessitated by your refusal to take the actions necessary to utilize the time clocks at IAH Terminal Operations. Specifically, your refusal to utilize the biometric time clocks which are a required component of punching in.

As we discussed on the phone, an appeal board cannot change Continental's requirement for use of the biometric clocks, nor can they change your mind about utilizing the biometric time clock. Further, as we discussed, at any point through this process, you've been invited to come provide the biometric image and return immediately to work. During our conversation, you indicated to me that both Nick Petrov and Bob White had made this option very clear.

During our conversation, you expressed concerns about the security of the biometric image. The information I provided to you over the phone is included in the attached information. I've also attached other general information. I hope that this will help to allay your concerns. Let me reiterate to you my offer to schedule a conversation between you and Andy Zamborsky. Andy is the technology manager responsible for the *eTA* project and would also be able to provide "expert" answers to your questions.

Mr. Johnson, it's my hope that you will reconsider your decision. If you do, please contact us immediately and your return to work will be expedited. If you do not change your decision, we would request that you provide your final decision to us in writing within 10 days of receipt of this letter. Lacking that written decision, we will assume that your decision is final and take the appropriate resulting measures.

Again, thank you for speaking with me. If I can provide any additional information to help with your decision, please contact me at (281) 553-8435.

Sincerely,

Katherine J. Churchill
Sr. Manager Human Resources

cc:    Ryan Price – Managing Director Human Resources
       Mark Erwin – Sr. Vice President Field Service

Attachments:      *eTA* Q&A
                  *eTA* Airport Services Division presentation
                  *eTA* Fact Sheet

# Exhibit D

**Continental**
**Airlines**



Continental Airlines, Inc.          Tel  713 324 5000
41st Floor  HQSLG              Fax 713 324 5161
1600 Smith Street
Houston TX 77002

June 19, 2001

James R. Davis, Esq.
THE LAW OFFICES OF JAMES R. DAVIS
815 Walker St., Suite 1640
Houston, TX 77002

     Re:    Stevan Erik Johnson

Dear Mr. Davis:

In response to your obstreperous and inflammatory letter of June 15, 2001, I offer the following information and response:

First, Continental has implemented a state-of-the-art time and attendance record keeping system designed to comply with the FLSA and the Department of Labor requirement that employers keep accurate records of each employee's hours worked. The system makes a computerized, numerically recorded image of the individual employee's finger for identification. There is no way to print out your client's actual fingerprint. There is no invasion of privacy.

Second, Continental cannot make special concessions and/or arrangements for your client when the payroll department has responsibility for over 55,000 employees. Mr. Johnson must adhere to the company's time and attendance system without qualification in order to be an active employee.

Third, Senior Manager for Human Resources, Katherine Churchill, correctly stated the company's appeal process in her letter of June 6, 2001 addressed to your client. Section 12, Part B, subpart 1(b) clearly states that the appeal process is available to employees when appealing the application (or misapplication) of a company policy or when inappropriate disciplinary action has occurred. Mr. Johnson's supervisor incorrectly indicated the availability of the appeal process in his memo dated June 1, 2001. The time and attendance system/equipment is neither disciplinary nor a policy. The simple truth is that Mr. Johnson cannot work if he refuses to comply with the company's time and attendance system.

IMANAGE 39894v1

Finally, there is nothing to mediate. Continental is steadfast in its belief that its state-of-the-art time and attendance record keeping system/equipment is appropriate and non-intrusive with regard to its employee's expectations of privacy in the workplace.

Sincerely,

Louis K. Obdyke
Senior Attorney
(713) 324-2218

cc:    Robert White
       Katherine Churchill

# Exhibit E



Continental Airlines, inc
Post Office Box 60307
Houston TX 77205

July 10, 2001

Mr. Steven Erik Johnson
1100 Langwick Dr. #502
Houston, TX 77060

Dear Mr. Johnson:

This letter is a follow-up to my June 6, 2001 letter. In that letter, I provided you with additional information regarding Continental's biometric clocks and our time and attendance system. Additionally, I advised you that if you needed further information to finalize your decision regarding provision of the biometric image that you should contact me. Finally, I requested that you provide your decision in writing within 10 days of receipt of my letter. To date, I have not received that written decision.

Mr. Johnson, regrettably, we cannot continue to hold your position any longer. Because you have failed to advise us of your decision, we are left to assume that your decision is final and that you've chosen to resign your position at Continental Airlines. Accordingly, we intend to process your resignation effective July 20, 2001.

If, however, you have reviewed the information that I had previously forwarded and have determined to utilize the time and attendance system required for Field Services employees, you must report and submit your biometric image no later than Noon, on July 20, 2001. Failure to do so will result in processing of your voluntary resignation.

Again, should you have questions, you may contact me at (281) 553-8435.

Sincerely,

Katherine J. Churchill
Sr. Manager Human Resources JAH

cc:    Ryan Price -- Managing Director Human Resources
       Mark Erwin -- Sr. Vice President Field Services

# Exhibit F

**Law Offices of James R. Davis, PLLC**
Attorney at Law
1447 Yale St.
Houston, Texas 77008
(713) 721-0500
(713)222-7421 FAX

AUG 1 6 2001

August 10, 2001

Dear Mr. Obdyke,

As you are aware, this office represents Stevan Johnson. We are now in possession of documents with Ms. Churchill's signature attached indicating that our client has been placed on some unspecified leave of absence. We could not find in the employee's manual any definition that this leave corresponds to. On June 1, 2001, Mr. Bob White suspended my client from work at Continental Airlines. My client then received a letter dated June 6, 2001, declaring this suspension to be a *leave of absence* rather than an actual suspension.

You may consider this communication a formal request for clarification as to what type of leave Continental has placed my client on. This clarification is vital to certain decisions my client must make concerning employee benefits. This office has repeatedly made requests of Mr. Lou Obdyke, in reference to gathering information as to the bioimaging system now in use by Continental Airlines. These requests, and subsequent promises, have not as of yet been honored. Please forward your explanation of what type of leave you have placed Stevan Johnson on to us along with the documents detailing the bioimaging system. Thank you.

Sincerely,

James R. Davis, Atty.

# Exhibit G

xxx

**Continental**
**Airlines**



Continental Airlines, Inc.
1600 Smith Street
Houston, TX 77002

Tel  713 324 5000
Fax 713 324 5...

August 17, 2001

VIA FACSIMILE – (713) 222-7421

James R. Davis, Esq.
1447 Yale St.
Houston, TX 77008

Re:   Stevan Johnson

Dear Mr. Davis:

As indicated in prior correspondence from me to you, and from Mr. Johnson's supervisor and HR manager to him, Mr. Stevan Johnson was suspended for refusing to provide a biometric finger image necessary for his activation of Continental's new time and attendance system. Continental representatives then advised Mr. Johnson that he was placed on an unpaid personal leave with a time limit of 10 days in which to advise his supervisor and HR as to whether he would submit to the required biometric imaging. Mr. Johnson was provided information on the biometric imaging system on or about June 6, 2001 with a reminder that he must decide whether he would comply with the new time and attendance program, and must report his decision to human resources. When human resources did not hear from Mr. Johnson, a follow-up letter was sent from the Senior Manager of Human Resources for IAH with a deadline for submitting his bioemtric image on or before July 15, 2001.

While you were apparently on vacation, an attorney by the name of Charles Johnson called the human resource manager involved in this matter. On July 20, 2001, I responded to Mr. Charles Johnson's call explaining the new biometric time and attendance system, and the long since past deadline for Mr. Stevan Johnson. Mr. Charles Johnson indicated that "his client" would be in to submit to the imaging process if given the opportunity. Mr. Stevan Johnson did not show up although I had extended the time through Monday, July 23, 2001. I called Mr. Charles Johnson on July 26, 2001 to advise that Stevan Johnson had apparently decided not to accept my offer because he had not shown up. Since Stevan Johnson had not shown up as promised by his lawyer, human resources sent him written notice that he was being administratively terminated as a "no-show, voluntary quit."

James R. Davis Letter
August 17, 2001
Page 2

Mr. Stevan Johnson has been removed from the employment rolls of Continental
Airlines, and will be receiving a COBRA notice in the mail, if he has not already received
it.

The biometric imaging information you requested is enclosed herewith.

Sincerely,

Louis K. Obdyke
Senior Attorney
(713) 324-2218

Enclosures

While the enrollment/verification system is state of the art, the information used in devices is not compatible with AFIS identification systems in a number of important ways.

### Resolution

The CMI verification system relies on the finger image ridges to determine correct and incorrect finger image matches. The resolution required to clearly define the ridge pattern is generally about 160 DPI (dots per inch). This resolution, used by CMI, is much lower than that required by AFIS systems which is (500 DPI).

### Image Size

CMI devices provide a cost effective identification solution by making use of small optical and solid-state sensors. The active area of these sensors is typically less than ¾" x ¾". AFIS identification systems rely on a full measure of the fingerprint as shown below, typically 1" x 1 ½". The difference in these image sizes is shown below.

### Image Enhancement

The CMI verification suite is based on the most advanced image enhancement tools available. The philosophy behind the image processing is to preserve and enhance the ridge pattern from a person's finger. Other features such as scars, cuts, or creases are removed since they can appear or disappear from employee's finger. Minutia-based comparison techniques use scars, for instance, as part of the comparison. Since these artifacts are removed during CMI enhancement and compression, the mathematical representation that serves as a CMI template is unsuitable for AFIS identification systems.

### AFIS Compatible Imagery



### A Comparable CMI Template



### Stored Template Image

The CMI locally stored template image is stored as a 350-byte number and means absolutely nothing to anyone but the reader. In addition the template is stored only at the reader and cannot be obtained.

EMPID FINGER
001    3
TEMPLATE

*Actual Finger Image Template*

010000000000000000000000002020000000000000000000000000000000003000003?0?=055>?970?50??=??40?90?0000000000008080683425482=321
;1302006>2894€::5<258<0231<0:05=?5?5>;75l;2;1589=:>754:<968:8579<<=22<1579347;>≥7>;:<965713;1=2><53:=964:>3219<61>;=36;:;=;66;3=8
5=8?0743:=<:7?7>;=5<6>7?5696=76=;458:=92494<71>4??7;;=5=92:;<5;;4=5;6<82552697=91=6>96?3=9=;2<9048;4;74;959>6?2>95499=?21743;2
395=><0:4=47737:;95>;07>3;1<>>16?49>411<;77743>6<341;4=4:15;;;=5<>972391<;20915';:<661361<160,85:2=952:;7339=<0>070385=422301:<=0
6>5>2:150:25138=<8>46>:19;8>;53190<066352==52:95128540:?4110904<6000000000



CONTROL MODULE INC.

227 BRAINARD RD, ENFIELD, CT USA 06082  www.controlmod.com

# Time and Attendance - Finger Imaging
## RUMORS and FACTS

**RUMOR** - *The new Continental finger image time clock system can be used to send my fingerprints to U.S. government agencies (police, Immigration, FBI).*
**FACT** –The finger image system doesn't even come close to being able to store enough detail to be used by <u>ANY</u> government agency. All AFIS systems (fingerprint systems approved for use by government agencies) must have an image that is at least 1½" by 1½". The new time clock system uses an image that is only ¾ " by ¾ ".

**RUMOR** - *The finger imaging system uses dangerous radiation to read my finger image.*
**FACT** – The system does use a radio signal to properly identify ridge and valley images one layer under the outer layer of skin. However the power of this radio signal is 1000 times less than the signal from a handheld cell phone (.6 watts), which equates to 0.0006 of one watt. The signal is so low that you must touch the sensor to make it work.

**RUMOR** - *If I cut my finger or I have a band-aid on the finger I use to clock in with, the system won't work and I won't get paid.*
**FACT** – The programming in the time clock actually compensates for cuts, scrapes and abrasions. It will actually fill in the missing ridges and valleys that were damaged by a cut or scrape. However, the clock CANNOT read through a band-aid. When you were enrolled in the system, you enrolled with one finger from each hand. Just use the other finger if you have a band-aid covering your finger.

**RUMOR** - *I'll get a disease or germs from touching the clock.*
**FACT** – Touching the sensor on the clock is no different than touching a telephone, a doorknob, or a computer keyboard. The constant repeated touching by so many employees actually keeps any germs from developing.

**RUMOR** - *Punching in and out is going to take a very long time.*
**FACT** – While the new clocks will increase the time it takes to actually punch in or out by about 2 seconds, we have anticipated potential bottlenecks in certain areas. To eliminate any increase in the time it takes to clock in and out, we closely evaluated the location and number of employees using each and every existing clock. Once the parallel period (2 pay periods) is complete, we will be relocating and installing additional clocks based on the information we collected. We were unable to do this with the CAPS system, and the new system allows us to install clocks just about anywhere.

# Time and Attendance - Finger Imaging
## RUMORS and FACTS

**RUMOR -** *The new time clock system stores my finger images as a picture or a JPEG and if a computer hacker accesses them they can be used in other similar systems.*
**FACT** – The time clock <u>DOES NOT</u> store the finger images as pictures. They are stored as a 350-byte data record containing symbols, numbers, and letters. The data record is absolutely useless to any system other than the Continental time and attendance system. Even if another carrier or company uses the CMI biometric time clocks, you would have to re-enroll in that system as the images cannot be transferred.

**RUMOR –** *My finger image is sent over the network where anyone can see and save it.*
**FACT** – The finger images are stored in each time clock. The only information that passes across the network is your employee identification number.

**RUMOR –** *I can only use certain fingers with the new time clock.*
**FACT –** The system will accept any finger. However we have found through many installations, that the middle and index finger on the hand you use less often is the best. While pinkies and thumbs can be used we have found that they provide the poorest images and as such have the *lowest* successful acceptance rate.

**FACT** – You can use different clocks in different areas. Unlike the CAPS system, you don't have to punch in and out on the same clock. In fact, because the new system uses one database, you can use clocks at any hub.

**FACT –** You can see your own time card on any kiosk. We encourage every employee to fully use the kiosks to especially to view their time cards each pay period. If you notice an error, you can ask your supervisor to fix it and you can see your corrected time card immediately on any kiosk.

**FACT** – You can view your last punches at the time clock.

**FACT** – You can view your balance information (sick, vacation, etc.) at any employee kiosk.

**FACT** – Each time clock has its own internal UPS battery backup system. During a power failure, you will still be able to punch in or out.

# eTA Fact Sheet

- What is the new time and attendance system?
    - It is a user-friendly Windows based system from Advanced Systems International in Southfield Michigan, near Detroit.
        - Other clients include
            - Sara Lee
            - Chrysler
            - Amazon.Com
    - The system was developed for Continental Airlines instead of adapting another industry's time and attendance system to our needs
    - The system will be rolled out in the following phases:
        - Phase One – Field Services in Cleveland, Houston and Newark
            - February 2001 – June 2001
        - Phase Two – Cargo and Field Services in the outstations
            - Beginning July 2001
- Will this system replace CAPS?
    - Yes
- What advantages does ATServer offer the employee?
    - Employee Kiosks will allow the employee touch screen access to the following online options:
        - Review accruals (Phase One)
        - Review daily worked hours (Phase One)
        - Shift and day trades (Phase Two)
        - Sign up for overtime (Phase Two)
        - Shift and vacation bidding (Phase Two)
        - Potential of implementing other Continental Airlines applications on the kiosk
            - Benefit/Human resources
            - E-ticket
            - Online uniform ordering
            - Company information
    - The Advanced Systems International Laborview product will allow extranet access to the kiosk applications for access from home (Internet connection is required)

- o Convenient employee sick call line
    - ▪ 1-888-324-SICK
- o New technology clocks
    - ▪ Increased stability over current CAPS clocks decreasing annoying outages
    - ▪ Biometric for increased security and prevents clocking errors
        - • Biometric technology utilizes the width and depth of the ridges in your finger to create a unique identification number that is 712 digits in length.
        - • Potential to use biometrics for other applications requiring high security
            - o 401K modifications and enrollment
            - o Benefit selections
            - o Beneficiary selections
            - o Name and address changes
            - o Picking up paychecks
            - o Online reservations
    - ▪ Same technology utilized by United Airlines and United Rentals
- • Behind the scenes
    - o Single server as opposed to 68 separate CAPS servers
        - ▪ Easier to upgrade
        - ▪ Easier to maintain
        - ▪ Will save Continental Airlines millions of dollars in maintenance costs
    - o Easier to use than CAPS
        - ▪ Allows administration departments more time to attend to your needs
    - o Flexibility
        - ▪ System can be upgraded if performance slows
- • What is the implementation Timeline?
    - o We will roll out different pieces of system functionality though 2001
    - o Implementation has begun in Cleveland (February 2001)
    - o Houston will be scheduled after successful completion in Cleveland
    - o Newark will follow Houston
    - o Outstation implementation will follow the hubs

## *eTA* QUESTION AND ANSWER SHEET

*Phase One Features – Starting date of 02/16/2001*
- Payroll Parallel – Both systems running concurrently to compare hours
- Replace CAPS – After system passes testing
- Employee Kiosks – Turned on after system replaces CAPS
  - o Worked hours review on the kiosk
  - o Accrued hour review on the kiosk

*Phase Two Features – Targeted start date of 07/01/2001*
- Employee Kiosks – You will be able to do:
  - o Online shift bids
  - o Online vacation bids
  - o Online day and shift Trades
  - o Online Overtime sign-up
- New sick call line – Call a standard sick call line
  - o 1-877-324-SICK

Q.    What is the new Time and Attendance System?
A.    It is a new advanced administration system intended to replace CAPS.

Q.    Why are we replacing CAPS?
A.    We want to offer you the latest and greatest technology possible. The new system gives Continental the opportunity to develop new applications such as online bidding, online overtime signup, online day trades and hour verification.

Q.    Do I need a computer at home to use the new features?
A.    No you do not. We will be placing employee kiosks into the breakrooms to access the new system.

Q.    Why do we use biometric clocks?
A.    The biometric clocks are much more stable than the current CAPS clocks. They also offer a higher level of security for the new system.

Q.    Are these fingerprints, and can they be used to identify me?
A.    These are not fingerprints. The biometric scan converts an image of your finger into an encrypted number. That number is what is stored on the server in a secured room at headquarters. Those numbers are absolutely meaningless to anyone and you cannot be identified by it.

Q.    So how do I swipe into the new system?
A.    You swipe your Continental Airlines identification badge first and then place your finger on the reader window. Please place your finger in the same position on the reader as when you enrolled. To clock in without your identification badge, first hit the A button (In/Out) and then type you employee number in and hit enter. You will then be prompted to place your finger on the reader.

Q.    Why do we still have to swipe?

A.    There is a clock that we could have used that allows you to use your finger alone, but that clock only holds 150 employees worth of information. We have use the current clocks because each hub has over 1,000 employees.

Q.    How do I know if the clock took my swipe?

A.    As long as you do not receive the "Invalid Finger" error, it took your swipe. If you get an error that indicates "ID NOT IN TERMINAL QUERY SENT TO HOST", please swipe again. This means your template is not in the clock. After your template is loaded you will receive the message, "Templates loaded, Please swipe again". If you receive a message indicating, "clocked outside of schedule", it is still a good swipe. If you have any other problems with the clock, please follow the current procedures and see your administration office or supervisor.

Q.    I heard that both people have to be present to do an online day trade?

A.    Both people do not have to be present. An employee can submit a daytrade to another employee online. When the other employee logs onto the system, they can either accept or decline the daytrade.

Q.    Can I post a day trade for someone to pick up?

A.    Currently the system requires that you already have your trade parameters arranged ahead of time. We are looking at reprogramming the system to allow a bulletin board of available trades online so people can view these to pick up hours.

Q.    What workrules have changed in the new system?

A.    No workrules have changed. The system applies your current rules in the Fly to Win handbook.

Q.    What if I have questions not answered here?

A.    Call me, I will answer your questions and list it on the next Q and A sheet.


We want to hear from you what type of future communications you would like. Please call me at (216) 501-5127 with your ideas so we can better communicate with you.

Regards,

Andrew Zamborsky
Sr. Manager Technologies, Time and Attendance Systems
(216) 501-5127
AZAMBO@COAIR.COM

Legal Department
P.O. Box 4607
Mail Code HQSLG
Houston, Texas 77210-4607

1600 Smith Street, HQSLG
Houston, Texas 77002

# Continental Airlines

**Sender:**    LOUIS K. OBDYKE

**Date:** Aug 17 2001

**Sender's Fax:**    713-324-5161
**Sender's Phone:**    713-324-2218

**Recipient:** James R. Davis

**Fax No.** 713 — 222 — 7421

**Telephone No.** 713 — 721 -0500

Total number of pages including this page: 10

If transmission is interrupted, please notify **Audrey Richardson at (713) 324-5144.** Thank you.

**Message:** Original will not be sent.

CONFIDENTIALITY NOTICE: The information contained in this facsimile transmission is intended only for the use of the addressee named above and may contain information that is privileged, confidential, or prohibited by law from disclosure. If you have received this transmission but are not the intended recipient, then you are hereby notified that any dissemination, distribution, or copying of this transmission is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone and return the original message to us at the above address via United States Postal Service.

IMANAGE 33003v1

# Exhibit H

**Law Offices of James R. Davis, PLLC**
Attorney at Law
1447 Yale St.
Houston, Texas 77008
(713) 721-0500
(713)426-6010 FAX

Sent by way of Fax: 713-324-5161

August 29, 2001

Dear Mr. Obdyke,

   I am surprised that you have refused to return my several calls concerning the case of my client, Stevan Johnson. It was my understanding that my client was to be allowed the opportunity to image with Continental. We never indicated that he was unwilling to do so. In fact, we were waiting on information you were to have provided us substantiating your claim that bioimiaging was not as invasive as it appears to be at first glance. We received this information on the day that he was terminated. The information did not contain anything other than the boiler plate information given directly to my client weeks ago. We expected assurances that the image taken would not have been improperly stored, used or disseminated. This is not unreasonable given the potential harm of potential misuse. The abuse of my client will not be accepted by this office. Maybe there was an honest misunderstanding.

   In addition, Charles Johnson did not say that our client would be in to do the imaging as you indicated in your letter. Mr. Johnson said his client had no intention of resigning, that he wanted to image, that he would come in to image, but that before he could do so, that he expected the information you promised to Charles Johnson in two previous conversation. Once agin, this could have been a misunderstanding. It is improper for this termination to have occurred because of confusion, mistake or misunderstanding between the lawyers.

   Once again my client once again constructively restates the complaints he made by way of our correspondence with Ms. Churchill before you were involved with this case. Please give me the courtesy of a phone call when you have some time.

Sincerely,

James R. Davis, Atty.

# Exhibit I

September 3, 2001

Mr. Stevan Erik Johnson
1100 Langwick Dr. #1905
Houston, Texas 77060

Dear Mr. Johnson:

Our department is in receipt of your request for first level appeal of your recent administrative discharge. I regret to inform you that appeals are available only in cases of disciplinary action or inappropriate application of policy. Your administrative discharge followed your voluntary decision not to utilize Continental's time and attendance system and thereby to abandon your job.

We made numerous attempts to resolve this issue; you were informed repeatedly that you could return to work immediately upon agreement to utilize Continental's time and attendance system. Regrettably, though we held your position open for more than 45 days, you ultimately chose not to return to work.

Mr. Johnson, I regret that we were unable to reach a different resolution to this matter.

Sincerely,


Katherine J. Churchill
Sr. Manager Human Resources

cc:     Lou Obdyke

# Exhibit J

October 17, 2001

Mr. Stevan E. Johnson
1421 N. Dunton Avenue
Arlington Heights, IL 60004

Dear Mr. Johnson:

Gordon Bethune received your letter dated September 13, 2001. He has reviewed this matter and asked that I assist him by responding.

On June 1, 2001, you were notified by Assistant Director Bob White that you would be required to utilize Continental's Time and Attendance System (*e*TA) which required use of the biometric imaging process. At that time, you expressed concerns and refused to utilize the system. As a result, you were informed that you could not continue to work and you were placed on an unpaid leave. Further, Mr. White directed that you may return from the leave at any point should you agree to provide the biometric image and utilize *e*TA. The leave was necessitated by your decision not to utilize *e*TA. At that time, you were not issued any level of disciplinary action (i.e. Verbal, Written, Termination Warning).

Subsequently, in a letter dated June 6, 2001, HR Manager Katherine Churchill notified you again that utilization of *e*TA was required. Further, she provided you with information about *e*TA and offered to set up a meeting with Continental's Technology Project Manager for *e*TA to attempt to satisfy any questions or concerns you might have. (You did not pursue this offer.) Ms. Churchill also reiterated that if you determined to provide the biometric image and utilize *e*TA that your return to work would be immediate. She asked that you provide a written decision regarding your status within 10 days of receipt of her letter.

On July 10, 2001, Ms. Churchill again wrote you advising that we could no longer continue to hold your position open. She advised that your failure to return to your position was construed as a decision to resign. She notified you that your voluntary resignation would be processed on July 20, 2001. Subsequently, we received notification from your attorney that you desired to return to work, however, you failed to report. On July 20, 2001 we processed your voluntary resignation as an administrative discharge.

Mr. Johnson, a requirement for being an active Field Services Agent at IAH is utilization of the time and attendance system. You were notified repeatedly of this requirement and notified that at **any point** from June 1 through July 20 that you could return to work and resume your position. We held your job open for more than 50 days and provided you with abundant information on *e*TA. Despite this, you chose not to report to work. Employees who choose not to report to work and choose not to punch-in are basically abandoning their jobs. Individuals who abandon their jobs are not entitled to utilize our appeal process.

Ample opportunity was provided to enable you to return to your position at Continental. The appeal process cannot change your refusal to participate in our Time and Attendance System. Nor can the appeal process change our requirement that you utilize the Time and Attendance System. I regret therefore that the

administrative discharge of your employment stands.  While I realize this is not the outcome that you were seeking, I do extend best wishes for your other future pursuits.

.ncerely,


Ryan Price
Managing Director
Field Services Human Resources

cc:    Mark Erwin – Sr. Vice President Field Services