# EXHIBIT A

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW

111 HUNTINGTON AVENUE
26TH FLOOR
BOSTON, MA 02199-7610
617.342.4000
FAX: 617.342.4001
EBGLAW.COM

November 6, 2003

**HAND DELIVERY**

Civil Clerk of Court
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Boston, MA 02210

    Re:  Stevan Johnson v. Continental Airlines,
          Inc.: Civil Action No. 03-11992 (PBS)

Dear Sir/Madam:

On behalf of the Defendant in the above-referenced matter, pending before the Honorable Patti B. Saris, enclosed for filing, please find the following pleadings:

- Defendant's Motion to Dismiss Or, Alternatively, For Summary Judgment With Incorporated Memorandum of Law;

- Local Rule 7.1 Statement.

Thank you for your attention to this filing.

Respectfully submitted,

Jeffrey M. Rosin

cc:    Stevan Johnson

ATLANTA · BOSTON · CHICAGO · DALLAS · HOUSTON · LOS ANGELES
NEWARK · NEW YORK · SAN FRANCISCO · STAMFORD · WASHINGTON, D.C.

BO:111317v1

EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVAN JOHNSON,<br><br>      Plaintiff,<br><br>v.<br><br>CONTINENTAL AIRLINES<br>CORPORATION<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No: 03-11992 (PBS)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY,
FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(6) and 56(c), Defendant, Continental Airlines Corporation ("Defendant" or "Continental"), hereby submits its Memorandum of Law in Support of Its Motion to Dismiss Or, Alternatively, For Summary Judgment ("Motion"). Defendant seeks entry of judgment in its favor on all counts in the complaint ("Complaint") of plaintiff, Stevan Johnson ("Plaintiff" or "Johnson").

For the reasons below, Defendant's Motion should be granted.

**PRELIMINARY STATEMENT**

This is a dispute arising out of an employment relationship, and it is the fifth action Johnson has commenced against Continental: the first three were charges filed with the Equal Employment Opportunity Commission ("EEOC") in Houston, Texas; and the fourth was a charge filed with the EEOC in Boston. (See Exhibits 1A, 2A, 3A and 4A hereto) The EEOC has dismissed all of Johnson's charges, finding no violations of law and issuing him Notices of Right

to Sue. (See Exhibits 1B, 2B, 3B and 4B hereto)  This is the first action Johnson has commenced in court, and his complaint is brought *pro se*.

Continental submits this Motion, providing material outside the allegations in Johnson's Complaint, in an effort to bring this action to expeditious resolution.  As set forth below, none of Johnson's claims have any legal and/or substantive merit.  Some of them should be dismissed pursuant to Rule 12(b)(6).  Others should be dismissed under Rule 56 standards.

## FACTUAL BACKGROUND

1. Johnson began his employment with Continental in June 1994. (Complaint, ¶ 8) He worked for Continental in Boston, until he was transferred to Houston, Texas on July 26, 1999. (Id. ¶¶ 18, 34)

2. In the early spring of 2001, Continental implemented a new technology to electronically record employees' time and attendance ("eTA System"). (See Exhibit 5 hereto, Affidavit of Katherine J. Churchill ("Churchill Affidavit"), ¶ 3)  To implement the eTA System, each employee needed to provide a digital thumb image, which would enable each employee to utilize a state of the art biometric time clock to "punch-in" and "punch-out" from work. (Id.)

3. Johnson refused to participate, and provide the image. (Id. ¶ 4)  Accordingly, on June 1, 2001, Continental placed Johnson on an unpaid leave. (Id. Exhibit A thereto)

4. Johnson tried to appeal the decision to place him on the unpaid leave, but Continental informed him that the decision was not appealable. (Id. ¶ 5, Exhibit B thereto)[1]  As

---

[1] Initially, a Continental manager mistakenly informed Johnson that the decision was appealable. (See Churchill Affidavit, Exhibit A)  Continental then informed Johnson that there was nothing to appeal.  The eTA System was the company's new time-keeping system and all employees had to participate. (Id. at Exhibit B)

2

Continental wrote to Johnson on June 6, 2001: "an appeal board cannot change **Continental's** requirement for use of the biometric clocks, nor can they change **your** mind about utilizing the biometric time clock." (Id. (emphasis in original))  Again, Johnson was reminded that he was invited to provide the biometric image and return to work. (Id.)  Moreover, Continental gave him written information to allay his purported security concerns about the eTA System as well as person to contact with any questions he had. (Id.)  Continental further informed Johnson that he had 10 days to submit a written decision as to whether he planned to return to work and comply with the eTA System and warned him that it would take appropriate action if he failed to appear. (Id.)

5. On June 18, 2001, Continental received a letter written by Attorney James Davis and dated June 15, 2001. (Id. ¶ 6, Exhibit C thereto)  In this letter, Attorney Davis accused Continental of "illegal" and "invasive" activity, "racial branding", conduct "offensive of all basic human rights" and humiliation greater than making "a man get on his knees and bark like an animal." (Id.)  Attorney Davis requested that Johnson be given the right to appeal any employment decision Continental contemplated making and that he be permitted to appear at Continental on Johnson's behalf to mediate the matter. (Id.)  He also wrote, "My client will give you his fingerprint, yet reserves the right to challenge its use for *any* reason by Continental Airlines, its agent, subsidiaries, parent or assigns." (Id. at 2 (emphasis in original))

6. On June 19, 2001, Counsel for Continental responded to Attorney Davis' letter. (Id. ¶ 7, Exhibit D thereto)  In its response, Continental informed Attorney Davis that the implementation of the eTA System allowed it to have accurate records of employee hours worked for purposes of complying with the Fair Labor Standards Act. (Id.)  It further notified Attorney Davis: "Continental cannot make special concessions and/or arrangements for your

client when the payroll department has responsibility for over 55,000 employees. Mr. Johnson must adhere to the company's time and attendance system without qualification in order to be an active employee." (Id. at 1)  Johnson was **the only** employee who refused to adhere to the system at that time. (Id. ¶ 7)

7. Johnson did not return to work to have his finger imaged. (Id. ¶ 8)  On July 10, 2001, Continental wrote to Johnson informing him that it could not hold open his position and that it would process his voluntary resignation effective July 20, 2001 if he did not report to work and submit his biometric image by noon that day. (Id. at Exhibit E thereto)  Johnson did not show up by that time, nor did he show up despite further promises to Churchill to do so on July 30, 2001 and August 8, 2001. (Id. ¶ 9)  Following that, Churchill directed Continental's administrative department to discharge him with an effective date of July 20, 2001 in light of his failure to meet that original deadline. (Id. ¶ 9)

8. On August 16, 2001, Continental received a letter from Attorney Davis, inquiring about Johnson's status. (Id. ¶ 10, at Exhibit F thereto)

9. On August 17, 2001, Continental responded to Attorney Davis that Johnson's employment had been "administratively terminated" as a "no show, voluntary quit." (Id. ¶ 11, Exhibit G thereto)  Indeed, not only had Johnson been out of work for his refusal to provide a biometric image for nearly two months, but back in July, a different attorney had called Continental on behalf of Johnson, and said that Johnson would actually be in to have his biometric image taken. (Id.)  Johnson still did show up after this promise. (Id.)

10. Attorney Davis wrote back to Continental on August 29, 2001, claiming that Continental had misunderstood Johnson's intentions and that he thought his client "was to be allowed the opportunity to image with Continental." (Id. ¶ 12, at Exhibit H thereto)  Attorney

4

Davis claimed that Johnson had been waiting for Continental to provide him with information to allay his security concerns. (Id.) Continental had already provided this information. (Id.)

11. Johnson again sought to use Continental's internal appeal procedure. (See Complaint, ¶ 9) Again, there was nothing to appeal. (See Paragraph 4 and Note 1, supra) Churchill Affidavit, ¶ 13, at Exhibit I thereto) Moreover, Johnson's consistent failure to come to work constituted job abandonment, and there is nothing to appeal when an employee abandons his job. (Id.; see also id. at Exhibit J thereto)

12. Johnson filed his first charge of discrimination with the EEOC in Houston on January 4, 2002. (See Exhibit 1A hereto) In that charge, he alleged that Continental did not adequately investigate his complaints against his supervisor in Boston, Peter Walsh ("Walsh"), and that, due to his race (black male), he was denied the opportunity to participate in Continental's internal appeal process. (Id.) The EEOC dismissed the charge and issued Johnson a Notice of Right to Sue in U.S. District Court. (See Exhibit 1B hereto)

13. With the assistance of Attorney Davis, Johnson filed a second EEOC charge in Houston on January 29, 2002. (See Exhibit 2A hereto) In this charge, Johnson challenged Continental's attempt to "force" him to use the eTA System, and suggested that the system was race-based. (Id.) Additionally, he again challenged Continental's decision to deny him an internal appeal. (Id.) On March 18, 2002, the EEOC administratively closed this charge, noting, "All information in [it] will be associated with the previously filed charge." (See Exhibit 2B hereto)

14. On November 13, 2002, Johnson filed a third EEOC charge, this time claiming that his employment was terminated on August 8, 2001 after he had complained about discriminatory treatment on August 7, 2001. (See Exhibit 3A hereto) He also claimed that

5

Continental retaliated against him by filing an appeal with the Texas Workforce Commission, which had granted him unemployment compensation. (Id.) On November 15, 2002, the EEOC dismissed this charge, and issued Johnson a Notice of Right to Sue. (See Exhibit 3B hereto)

15. On June 28, 2002, Johnson applied for a job as a Sky Cap in Boston with GlobeGround North America, LLC ("GGNA"), which contracts Sky Cap services to various airlines, including Continental. (See Complaint, ¶¶ 37-39; Churchill Affidavit, ¶ 14) Sky Cap services include assistance with luggage, transportation to flight gates (e.g., by wheelchair or cart) and other miscellaneous work to ensure the smooth transition of passengers to and from their flights. (See Churchill Affidavit, ¶ 14)

16. GGNA called a Continental General Manager in Boston for a reference. (Id.) The Manager referred GGNA to a "hotline" for employment verification, which is Continental's policy. (Id.) Continental requested only that Johnson not be assigned by GGNA to work for Continental, but gave no reason. (Id.)

17. On March 28, 2003, Johnson filed a fourth EEOC charge, this time in Boston. (See Exhibit 4A hereto) In this charge, Johnson alleged again that his employment was terminated on August 8, 2001 in retaliation for claiming discrimination on August 7, 2001, and again that he was denied the right to an internal appeal of his termination based on his race. (Id.) Further, he alleged that Continental's job reference to GGNA was retaliatory, although he acknowledged that he did get the job with GGNA, describing GGNA as his "current employer." (Id.) For this claim, Johnson alleged that he received a "disadvantageous job assignment that materially affected the terms, condition, and privileges of his employment with [GGNA]." (Id.)

18. Once again, the EEOC dismissed Johnson's charge finding no violation of law and, on August 26, 2003, issued Johnson a Notice of Right to Sue. (See Exhibit 4B hereto)

## JOHNSON'S COMPLAINT IN THIS COURT

Johnson filed the instant action on or about October 14, 2003. In his Complaint, he sets forth essentially three categories of allegations:

- that from 1997-1999, at the time he was working for Continental in Boston, he felt mistreated by Walsh. (See Complaint, ¶¶ 20-28, 30-32) In April 2001 (i.e., nearly two years after his transfer to Houston), he met with a Human Resources manager in Houston to complain about Walsh's behavior. (Id. ¶ 35) Thereafter, he claims that Continental terminated his employment in an act of retaliation. (Id. ¶ 37)

- that he should have been given the right to appeal the termination of his employment by way of Continental's internal appeal procedure. (See Complaint, ¶¶ 9-12)

- that on June 28, 2002, Continental retaliated against him in its reference to GGNA.

Based on these allegations, Johnson's Complaint asserts five statutory causes of action: Retaliation, Disparate Treatment and Disparate Impact in Violation of Title VII; Violation of 42 U.S.C. § 1985; Violation of 42 U.S.C. § 1981; Violation of 45 U.S.C. § 151 *et seq.*; and Violation of 49 U.S.C. § 40101 *et seq.*

## ARGUMENT

A motion to dismiss should be granted where, in the complaint, a plaintiff "fail[s] to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). "Although the court must take the factual averments of the complaint as true and draw all reasonable inferences in favor of the plaintiff [], it is not required to accept every allegation made by the complainant no matter how conclusory or generalized." See Lassiter v. Mass. Bay Transportation Authority, No. Civ.A. 01-11699 (PBS), 2002 WL 1858761, *2 (D. Mass. 2002) (citations omitted). Pursuant to Rule 12(b), moreover, the Court can also consider evidence introduced outside of the pleadings

7

and convert the motion into one for summary judgment pursuant to Rule 56. See Fed. R. Civ. P. 12(b); see also Bertera Chrysler Plymouth, Inc. v. Chrysler Corp., 992 F. Supp. 64, 65-66 (D. Mass. 1998). Under Rule 56 standards, judgment is appropriate if no material facts are in dispute. See Fed. R. Civ. P. 56(c). To meet his burden in opposing a motion for summary judgment, Johnson is required to come forth with more than "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

I. **Johnson's Claim For A Violation of Title VII Should Be Dismissed Pursuant to Rule 12(b)(6) Or Rule 56(c)**

Johnson's Title VII claim should be dismissed either for failure to state a claim or because Johnson will be unable to prove the claim at trial.

A. **All But One Of Johnson's Title VII Claims Are Time-Barred**

As an initial matter, all but one of the allegations in Johnson's Complaint that could relate to his Title VII claim are time-barred. Title VII requires that Johnson file a charge addressing his claims against his employer within 300 days of the act alleged. See 42 U.S.C. § 2000e-5(e) (establishing a 300-day limitation period for actions under Title VII that were first presented to a state administrative agency). Johnson filed his charge with the EEOC in Boston on March 14, 2003, making any claims occurring before May, 2002 untimely.

In his EEOC Charge, the only conduct Johnson alleged occurring during the applicable limitations period was the alleged retaliatory reference Continental gave to GGNA. (See Exhibit B hereto, ¶ III) All other conduct alleged by Johnson in his March 14, 2003 EEOC charge pre-dates May, 2002. (Id. ¶¶ I, II) Moreover, in his Court Complaint, the substantial majority of

8

Johnson's claims concern conduct occurring from 1997-1999 and in 2001.[2] (See Complaint, ¶¶ 8-37) The only conduct Johnson alleges in his Complaint occurring within Title VII's statutory of limitations is, again, the alleged retaliatory reference to GGNA.[3] (Id. ¶¶ 38-40)

For this reason, all allegations in Johnson's Complaint other than the alleged retaliatory reference should be dismissed as time-barred.[4]

### B. Johnson's Allegation Regarding The Alleged Retaliatory Reference Fails To State A Claim

Johnson's allegation regarding the alleged retaliatory reference does not state a *prima facie* case for a violation of Title VII. To state a *prima facie* case of retaliation, a plaintiff must allege that he suffered an "adverse action" with a "material consequence" which has a "causal nexus" to his engaging in a protected act. See Higgins v. New Balance Athletic Shoe, 194 F.3d 252, 262 (1st Cir. 1999); Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996); Ligenza v. Genesis Health Ventures of Massachusetts, Inc., 995 F. Supp. 226, 232 (D. Mass. 1998).

---

[2] Much of this conduct was already at-issue in Johnson's Houston EEOC charges, but he failed to file civil complaints thereon within 90 days of receiving his Right to Sue Notices. (See Note 4, infra)

[3] Johnson also sets forth an allegation regarding a white-male in February 2003 who was supposedly treated differently than Johnson. (See Complaint ¶¶ 44-45) This allegation, occurring more than one a half years after he left Continental, does not make his claim timely and cannot support his Title VII claim.

[4] Notwithstanding statute of limitations issues, an additional reason supports the dismissal of Johnson's claim regarding the alleged failure to offer him an internal appeal. Namely, Johnson raised this allegation in his first two Houston EEOC charges. (See Factual Background, ¶¶ 12-13, supra) He was given a Notice of Right to Sue on these charges within 90 days, but he failed to do so. Now, years later, he should not be permitted to resurrect the claim by adding it into his fourth EEOC charge and bringing it into court. See Perez Cordero v. Wal-Mart PR, Inc., 235 F. Supp. 2d 95, 103 (D.P.R. 2002) (adjudicating Rule 12(b)(6) motion and noting that claim would be subject to dismissal for failure to file within 90 days of EEOC notice).

Yet, in his Complaint, Johnson fails to allege any "adverse action" resulting from the retaliatory reference. Indeed, nowhere in Johnson's Complaint does he identify any "effect" of Continental's alleged statement to GGNA, or how his employment with GGNA was "materially" altered. From Johnson's EEOC charge, however, we do know that regardless of what he alleges Continental said to GGNA, he got the job with GGNA. In his EEOC charge, Johnson refers to GGNA as his "current employer." (See Factual Background, ¶ 17) While Johnson claims in the same charge that he received a "disadvantageous" job assignment, he does not describe or even identify that assignment in the charge or in his Complaint.[5] (Id.)

For these reasons, Johnson's Title VII Complaint regarding the retaliatory reference should be dismissed pursuant to Rule 12(b)(6).

    C.    **Johnson's Claim Regarding The Alleged <u>Retaliatory Reference Fails To Survive Rule 56 Standards</u>**

Even if this Court finds that Johnson has "stated a claim" for a violation of Title VII, alternatively, Rule 56 judgment should enter in favor of Continental on the claim.

*First*, even if Johnson could present facts which a fact-finder could view as a materially adverse job assignment with GGNA which Continental was responsible for (<u>but see</u> Note 5, <u>supra</u>), Johnson will be unable to prove the "causal nexus" element of his *prima facie* case. Indeed, to survive summary judgment on this claim, Johnson's must be able to come forth with evidence which presents a "differing version[] of the truth which a factfinder must resolve." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). Yet, in order for this

---

[5]    In order to hold Continental liable for any "disadvantageous job assignment" Johnson claims to have received with GGNA, he would need to allege that Continental exercised varying types of control over his daily work with GGNA. See <u>Orell v. UMass. Memorial Medical Center, Inc.</u>, 203 F. Supp. 2d 52, 62-63 (D. Mass. 2002) (discussing various factors and indicia of control required to hold third party liable under Title VII). Johnson has not done so.

10

Court to submit the "causal nexus" element to a jury, Johnson would have to present evidence that Continental's reference to GGNA was motivated by his complaints of discrimination as opposed to his refusal to work under Continental's rules and procedures of employment. In light of the undisputed fact that Johnson was the only employee who refused to participate in Continental's eTA System, however, Johnson will be unable to prove this element. See Kosereis v. Rhode Island, 331 F.3d 207, 217 (1st Cir. 2003) (affirming summary judgment based on employee's failure to show a causal connection between discrimination complaints and reprimands and denial of a sabbatical); see also King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir. 1997) (insufficient for causal nexus element of retaliation claim for plaintiff to "simply recount that he complained and that he was disciplined[.]")

*Second*, Johnson will not be able to prove a claim of retaliation under Rule 56 standards even if he can prove all of the elements of his *prima facie* case. Indeed, even if this Court believes that Johnson can establish a *prima facie* case of retaliation, the claim cannot survive summary judgment unless Johnson has facts to prove that Continental's reason for its action is a pretext for discrimination. See Ligenza, 995 F. Supp. at 232.

Continental had a legitimate reason for telling GGNA it did not want Johnson assigned to work with Continental given Johnson's refusal to abide by Continental's rules and procedures. (See Factual Background, ¶ 16) Johnson cannot show that Continental's reason is a pretext for discrimination because Continental's reference was rooted in a rationale which was applied equally to all. (See Factual Background, ¶ 6) Indeed, Johnson was **the only** employee (of any race) who refused to abide by Continental's new time-keeping procedure at that time. (Id.)

Judgment should enter in favor of Continental on Johnson's Title VII claim.

**II.   Johnson's Claim For A Violation of 42 U.S.C. § 1985
       Should Be Dismissed For Failure To State A Claim**

Section 1985 "provides no substantive rights itself." Great American Federal Savings & Loan Assn. v. Novotny, 422 U.S. 366, 372 (1979). Instead, it is a "purely remedial statute" which gives "a civil cause of action when some otherwise defined federal right . . . is breached by a conspiracy in the manner defined." Id. at 376. For there to be a cause of action under Section 1985, there must be a federal right alleged to have been violated which is not already addressed in some other comprehensive legislative scheme. See Lopez Rosario v. Police Department, 126 F. Supp. 2d 167, 174-75 (D.P.R. 2000) (citations omitted).

In his Complaint, Johnson alleges that Continental violated 42 U.S.C. § 1985 by:

> Intentionally discriminat[ing] against Black employees and conspir[ing] to interfere with the civil rights of such employees, including Plaintiff, by depriving such employees, including Plaintiff, the same benefits, privileges and protections as Whites under the law of the United States of America.

(See Complaint, ¶ 50)

Johnson's allegation suggests a deprivation of a right created by Title VII, however, which already provides a comprehensive legislative scheme to address the conduct he challenges. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974). In Novotny, the Supreme Court held that Section 1985 "may not be invoked to redress violations of Title VII." Novotny, 442 U.S. at 378; see also Lopez Rosario, 126 F. Supp. 2d at 174-75. As the Supreme Court found Title VII and Section 1985 do not involve two "independent rights." Novotny, 442 U.S. at 378. The holding of the Supreme Court in Novotny has been extended to dismiss Section 1985 claims where a plaintiff asserts a violation of Section 1981 as well. See Jenkins v. Arcade Bldg. Maintenance, 44 F. Supp. 2d 524, 533 (S.D.N.Y. 1999) (RWS).

Johnson's Section 1985 claim should be dismissed for failure to state a claim.

## III. Judgment Should Enter In Favor Of Continental On Johnson's Section 1981 Claim

Title 42, Section 1981 of the United States Code, forbids racial discrimination in the making and enforcement of contracts and provides for the equal enjoyment of "benefits, privileges, terms, and conditions of the contractual relationship." See 42 U.S.C. § 1981(a), (b). The only "contract" referenced in Johnson's Complaint is that of the internal appeal process available to Continental employees.[6] (See Complaint, ¶¶ 9-12)

Johnson's Section 1981 claim cannot survive Rule 56 standards. The required elements of proof applied to Title VII claims apply equally to claims brought under Section 1981. See Nakai v. Wickes Lumber Co., 906 F. Supp. 698, 703 (D. Me. 1995) (citing, Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987)). To prove this claim, Johnson has to come forth with facts which demonstrate that Continental's legitimate non-discriminatory reason for denying him an internal appeal is a pretext for race-based discrimination. See Hill v. Textron Automotive Interiors, Inc., 160 F. Supp. 2d 179, 187 (2001) (citations omitted).

Continental's legitimate non-discriminatory for not providing Johnson an internal appeal is that the appeal process was not available to him for refusing to obey Continental's rules of employment. (See Factual Background, ¶¶ 4, 11 and Note 1 supra) Indeed, Johnson had failed to show up for work, despite having been given nearly two months and every opportunity to do so. (Id.) There is no basis for Johnson to claim this was a race-based decision particularly when Johnson was the only employee out of some 55,000 who refused to obey this rule of employment.

Judgment should be entered in favor of Continental on Johnson's Section 1981 claim.

---

[6] Johnson's attempt to bring this claim at this time is no more than an effort to circumvent his failure to meet conditions precedent to suit on this claim under Title VII. (See Note 4, supra) It should be rejected on that basis.

## IV. Johnson's Railway Labor Act Claim Should Be Dismissed Pursuant To Rule 12(b)(6)

In his Complaint, Johnson asserts a claim under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, which is applicable to air carriers. See 45 U.S.C. § 181. He claims that Continental "failed to exert every reasonable effort to settle [his] dispute." (See Complaint, ¶ 55) The RLA does not apply in the context of Johnson's Complaint, however.

As the Supreme Court has recognized, the RLA applies to two types of cases in the context of "settling" disputes: "the first relates to disputes over the formation of collective agreements or efforts to secure them[;] . . . the second class [] contemplates the existence of a collective agreement already concluded, or at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one." See Elgin, J. & E.R. Co. v. Burley, 325 U.S. 711, 723 (1945). The first type of dispute is not applicable here because there is no dispute over the formation of a collective bargaining agreement. The second type of dispute is not applicable either.

As the Supreme Court stated in Elgin, the second type of dispute "relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case." Id. at 723. In essence, these are grievances that need to be "settled" by reference to the CBA and the use of a three-stage resolution procedure involving: (i) negotiation, (ii) conferencing and (iii) adjudication by a tribunal known as the Adjustment Board (if necessary). Id. at 725-28. Johnson's Complaint does not support such a claim.

Johnson's RLA claim should be dismissed pursuant to Rule 12(b)(6).[7]

---

[7] Johnson's RLA claim is also subject to Rule 12(b)(6) dismissal on statute of limitations grounds. Indeed, a 6 month statute of limitations applies to the assertion of a claim under the RLA. See Linder v. Berge, 739 F.2d 686, 688 (1st Cir. 1984); see also Robinson v. Pan American World Airways, Inc., 777 F.2d 84, 88-89 (1985). Yet, the alleged wrongful conduct Johnson claims to be a violation of the RLA occurred in the summer/fall of 2001. His RLA action, now filed more than 2 years later, is time-barred.

## V. Count V Should Be Dismissed For Failure To State A Claim

Johnson brings his final claim under the Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et seq.* ("FAA") (See Complaint, ¶¶ 56-57) The FAA also is not applicable on the face of his Complaint, however.

> Congress enacted the [FAA] for the purpose of centralizing in a single authority the power to frame rules for the safe and efficient use of the nation's airspace. . . . In the [FAA], Congress authorized the Secretary of Transportation to develop plans for and formulate policy with respect to the use of the navigable airspace. . . . Congress further directed the Secretary to assign the use of the navigable airspace under such terms, conditions and limitations as deemed necessary to insure the safety of aircraft and the efficient utilization of such airspace. Congress empowered the Secretary to prescribe rules and regulations to perform these functions. . . The Secretary of Transportation delegated to the Federal Aviation Administrator the authority to carry out its powers and duties regarding the safety and utilization of the nation's navigable airspace.

In re Gull Air, Inc., 890 F.2d 1255, 1256 (1st Cir. 1989) (citations omitted).

In short, the purpose of the FAA is to improve air safety, provide regulations for transportation and regulations to help prevent or reduce aviation accidents. See 49 U.S.C. § 40101; see also Zabala Clemente v. United States, 567 F.2d 1140, 1144 (1st Cir. 1978). Yet, Johnson seeks to use the statute to claim discrimination by an air carrier towards an employee. (See Complaint, ¶ 57) Although courts certainly recognize that airline employers cannot discriminate against their employees, Title VII protect these rights.[8] We know of no authority supporting the use of the FAA this way.

Johnson's FAA claim should be dismissed for failure to state a claim.

---

[8] See, e.g., Fine v. Ryan Intern. Airlines, 305 F.3d 746 (7th Cir. 2002); Abdu-Brisson v. Delta Airlines, Inc., 128 F.3d 77 (2d Cir. 1997).

15

## CONCLUSION

For the reasons above, Defendant's Motion to Dismiss Or, Alternatively, For Summary Judgment should be granted and judgment should enter in favor of Defendant on Plaintiff's Complaint.

>Respectfully submitted,
>
>CONTINENTAL AIRLINES, INC.
>
>By its attorneys,
>
>_____
>David S. Rubin, BBO # 546213
>Jeffrey M. Rosin, BBO #629216
>Epstein, Becker & Green, P.C.
>111 Huntington Avenue
>Boston, MA 02199
>(617) 342-4000

Dated: November 6, 2003

## CERTIFICATE OF SERVICE

I, Jeffrey M. Rosin, hereby certify that, on this 6th day of November, 2003, I served a copy of this pleading by First Class Mail to *pro se* plaintiff:

>Stevan E. Johnson
>1421 N. Dunton Avenue
>Arlington Heights, IL 60004

_____
Jeffrey M. Rosin

16